CHARLES F. DUNN et al.

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon November 4, 1895.*

1. INDICTMENT—*for an assault need not aver present ability.* An indictment for assault with intent to murder need not aver the *present ability* of the defendant to do the violence.

2. SAME—*manner of an assault to murder need not be particularly stated.* In a prosecution for assault to murder, the gist of the offense is an assault with a felonious intent; and the indictment need not set out the *manner* of the assault with any particularity.

3. EVIDENCE—*to convict of crime—degree required when circumstantial only.* Circumstantial evidence, to warrant a conviction of crime, must be of a conclusive nature and tendency, leading, on the whole, to a satisfactory conclusion, and producing a reasonable and moral certainty that the accused, and no one else, committed the crime charged.

4. SAME—*what is insufficient to prove identity of accused.* The identity of the accused with the person firing a shot is not sufficiently shown, to warrant his conviction, by the mere fact that foot-prints at the place of the shooting were of the same size as those found where the accused had been walking, though taken with other facts which merely raise a suspicion of guilt.

5. SAME—*the evidence must be inconsistent with defendant's innocence.* Where the entire evidence produced against defendants charged with assault with intent to murder could be true and yet be entirely consistent with their innocence, a conviction will not stand.

WRIT OF ERROR to the Circuit Court of Johnson county; the Hon. ALONZO K. VICKERS, Judge, presiding.

Plaintiffs in error were indicted at the March term, 1894, of the Johnson county circuit court for an assault to kill and murder one Robert Kelly. The indictment was in the usual form. The jury found them guilty, and fixed their punishment at imprisonment in the penitentiary each for a term of seven years. Motions for a new trial and in arrest of judgment were made and overruled. Judgment was rendered and sentence pronounced in accordance with the verdict.

The evidence is wholly circumstantial, and consists largely of the statements of witnesses in relation to footprints found around and about a certain straw stack where the assault was made, comparing in size with those made by the defendants. A few nights previous to the alleged assault there had been some meat stolen in the neighborhood, and on March 9 it was found in a straw stack on the premises of one J. D. Wharton, and on the night of the 10th of March Robert Kelly, Irving Roberts, John Terry and George Grace were in concealment near the straw stack to see who, if any person, came for the meat, and while lying on the stack Kelly was shot. Terry had a pistol in his lap, and none of the party on the stack saw who did the shooting.

SPANN & SHERIDAN, for plaintiffs in error:

The essential element of "present ability" is wanting in this indictment. *Adell* v. *State*, 34 Ind. 543; *Howard* v. *State*, 67 id. 401.

Each material fact must be proved beyond a reasonable doubt. *Commonwealth* v. *Webster*, 5 Cush. 296; *People* v. *Fairchild*, 48 Mich. 31; *Walbridge* v. *State*, 13 Neb. 236; *People* v. *Guidici*, 100 N. Y. 503; 1 Starkie on Evidence, 502; 3 Phillips on Evidence, (Com. & H. notes,) 472, note 288; Wharton on Crim. Evidence, sec. 333.

The circumstances taken together must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the accused and no other person committed the offense charged. *Sumner* v. *State*, 5 Blackf. 579; *Walbridge* v. *State*, 13 Neb. 236; Maxwell on Crim. Proc. 202.

MAURICE T. MOLONEY, Attorney General, T. J. SCOFIELD and M. L. NEWELL, of counsel, and GEORGE B. GILLESPIE, State's Attorney, for the People:

It is the settled rule of this court that a reversal will not be granted because the Supreme Court may have

some doubts of the correctness of the verdict, but unless the court is clearly satisfied that the verdict, under the evidence, was wrong, it must stand.    *Cronk* v. *People*, 131 Ill. 56; *Aholtz* v. *People*, 121 id. 560; *Graham* v. *People*, 115 id. 366.

It is not necessary to set out the manner of the assault with any degree of particularity.    *Hamilton* v. *People*, 113 Ill. 34; *Conolly* v. *People*, 3 Leem. 474.

Unnecessary words will not vitiate an indictment if the count would be good upon striking them out.  1 Bishop on Crim. Proc. sec. 478; *Dunham* v. *People*, 4 Scam. 172; *Flint* v. *People*, 45 Ill. 259.

Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense so plainly that the nature of the offense may be easily understood by the jury.    *Allen* v. *People*, 82 Ill. 611 ; *Lyons* v. *People*, 78 id. 271 ; *Mapes* v. *People*, 69 id. 523.

Belief, beyond a reasonable doubt, that the defendant is guilty as charged, upon a consideration of the whole evidence, is all that is ever required in any criminal case. *Bressler* v. *People*, 117 Ill. 439 ; *Mullins* v. *People*, 110 id. 42 ; *Leigh* v. *People*, 113 id. 372; *Davis* v. *People*, 114 id. 98.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The first error complained of by plaintiffs in error is in overruling the motion to quash the indictment.    The principal ground urged is, that the indictment does not contain the essential element of *present ability*.    The *present ability* to do the violence has always been held one of the ingredients and an element of an assault, but it is not necessary to allege it as such in an indictment of this character.    We hold it more a matter of evidence than of pleading.    Wharton on Crim. Law, (6th ed.) sec. 1281.

We have carefully examined the other objections made to the indictment, and they are not well taken.    Whilst

this indictment is not accurately drawn, it charges enough to constitute an indictment for assault to murder. In a case of this kind the gist of the offense is an assault with a felonious intent, hence it is not necessary to set out the manner of the assault with any degree of particularity. *Hamilton* v. *People*, 113 Ill. 34.

It is also insisted by the plaintiffs in error that the evidence does not support the verdict. After a careful examination of the evidence in this case we are not prepared to say that the jury were warranted in finding the verdict returned by them. The proof of a charge in criminal cases involves the proof of two distinct propositions: First, that the act itself was done; and second, that it was done by the person or persons charged, and by none other,—in other words, proof of a *corpus delicti*, and the identity of the person or persons. In the present case the fact of Kelly being shot is proven satisfactorily. It was also required to be proven that the shooting of Kelly was done by the accused. In the proof of this the evidence is indefinite and uncertain.

We will not take the space to set the testimony out in full. As disclosed by the record on the part of the People, it shows that prior to March 9, 1894, some meat had been stolen in the neighborhood where the defendants reside, and on the 9th of March it was found in a straw stack on the premises of one Wharton. On the night of March 10 Robert Kelly and others were lying in wait at the stack to see who came for the meat, and while so waiting, between the hours of nine and ten o'clock, Robert Kelly was shot by some one. It appears that all the parties who were thus at the premises were asleep, or nearly so, at the time of the shooting. They heard what seemed to them a pistol shot, but did not hear any other noise or see any one. Kelly was shot in the back of the head and received a serious wound. Prior to and after the shooting foot-prints were seen about and around the stack, that appeared to the vari-

ous witnesses to correspond in appearance and size with those made by the said plaintiffs in error, as found in a field where they had been at work. Those found about the stack were of two sizes. On Friday, the day before the shooting, it appears the witnesses followed certain foot-prints, and found them to lead from the place where the meat was stolen to the stack. On Sunday morning, following the shooting, foot-prints were found and seen around the stack that appeared to be like the ones seen there before the shooting. The tracks from the stack, as found on Sunday morning after the shooting, led up to the corner of Rodgers' orchard. Some of the witnesses state they think the smaller track of the two corresponded with the track of the defendant Rodgers. They compared the smaller foot-prints with others found in Rodgers' field, which they claim were made by him. They compared other tracks found about the stack, and which they followed to the corner of Rodgers' orchard, with those found in the pathway in the wheat field of the defendant Dunn, and stated they appeared to be the same size and made by the same shoe. One of the witnesses noticed slight peculiarities in the tracks found, but the others could not discover any.

The evidence as to foot-prints was as to the size of shoes worn by those who made the tracks, and was, substantially, that one of the parties wore a No. 10 or No. 11 shoe whilst the other wore a No. 8 or No. 9. Only one of the witnesses for the prosecution testified to any peculiarity in the foot-prints, and that was, that one showed the shoe was slightly over at the heel. No other witness saw this, and the evidence does not show that either of defendants used shoes worn over at the heels. The real point of the evidence was, that the length and width of the foot-prints measured near the place where the shooting occurred corresponded with those found in the field and path where the defendants had been. Any two persons wearing shoes of the same size or number as those

designated in this evidence, would, if in the neighbor-
hood, have been liable to the charge, with the same evi-
dence of guilt. Circumstances to cause suspicion of the
defendants were also offered, consisting, not of acts done
in or about the place of the shooting, but as contradictory
of their claim that they left their homes near the place
of the shooting several hours before it occurred, and at
the hour of its occurrence were more than eight miles
distant.

The evidence does not carry with it a reasonable cer-
tainty of the guilt of the defendants. On the contrary,
the evidence for the State, standing alone, does little
more than excite a suspicion of guilt. It is not of that
convincing character that satisfies the mind. With all
the evidence for the prosecution considered, there must
be a reasonable doubt of the guilt of these defendants
from that evidence.

In addition to this unsatisfactory evidence on the
part of the prosecution the defendants offered evidence
to establish an *alibi*,—that they left home on Saturday
evening, March 10, at about sundown, and went to Robert
Hayden's, about eight miles distant, and remained there
all night. The defendants were corroborated by both
Robert and Anna Hayden in this part of their defense.
The defendants claim, as disclosed by the record, that
they arrived at Hayden's at about eight o'clock on the
night of the alleged assault, and in this they are corrob-
orated by Hayden. The testimony of defendants and
Hayden is, that they went to bed at about nine o'clock
on the evening in question. Anna Hayden, wife of Robert
Hayden, was absent on that evening until about ten
o'clock, and on her return says the defendants were there
and in bed. She saw the face of the defendant Dunn and
recognized him and saw some one in bed with him, and
the next morning both the defendants were there. De-
fendants testify they wanted to be nearer to the county
seat, where they were to be on the Monday following in

attendance on court, and for that reason had gone to Hayden's the Saturday evening previous. The testimony of Marcus Crowder, a witness offered by the State, and who accompanied Mrs. Hayden home on the evening in question, in connection with the testimony of the defendants and Anna Hayden, is rather consistent with the testimony of the defense. It does not appear from the testimony of Crowder, viewing it in the light of all the facts and circumstances surrounding, that the defendants were not at Hayden's, as claimed, on the night in question. His testimony throws but little light, if any, upon the question. His statement of defendants coming to Hayden's house on Sunday morning is absolutely denied by defendants as well as by both Robert and Anna Hayden. Testimony was offered in rebuttal which impeached the testimony of Robert Hayden. Notwithstanding that fact he is corroborated by defendants and Anna Hayden, and she was not impeached nor were the defendants. Crowder, a mere boy, as disclosed by the record, went home with Mrs. Hayden to stay all night, and, as he said, retired to bed a few minutes after arriving there, and did not see the defendants. In connection with this, the prosecution attempted to show that the defendant Rodgers was seen at home fixing his fire at about twelve o'clock on the night of the alleged assault. The proof of this fact is unsatisfactory, as disclosed by the record. The son of Rodgers also says his father was not at home on the night in question, but that he went away at about sundown that evening and had not been home up to the time of the trial, having been arrested and held in custody before arriving home.

We have carefully examined this case, and, notwithstanding the fact that it is the peculiar province of the jury to weigh and consider the evidence, and judge from the appearance of the witnesses on the stand, their apparent honesty, intelligence and candor, what weight should be given to their testimony, we are not prepared

to hold, from the character of the evidence in this case relied upon by the prosecution, that the jury were warranted in finding the defendants guilty. To strip this case of the evidence relating to foot-prints or tracks testified to, would leave no proof against these defendants in connection with this charge. There is no evidence that either of them had a pistol at the time in question or at any other time.

In order to warrant a conviction for crime on circumstantial evidence, the circumstances, taken together, should be of a conclusive nature and tendency, leading, on the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the accused, and no one else, committed the offense charged. (*Carlton* v. *People*, 150 Ill. 181.) Applying this rule of law to the facts in this case, we must hold the evidence does not sustain the verdict found by the jury. Again, it is the invariable rule of law that to warrant a conviction in a case of this character, upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with the guilt of the party charged, and as cannot, upon any reasonable theory, be true and the party charged be innocent. In this case, the entire evidence produced against the accused could be true and yet be entirely consistent with their innocence. According to the rules of law hereinbefore announced applicable to this character of cases, this judgment must be reversed.

There are other objections raised upon the instructions by the plaintiffs in error, but it is unnecessary to discuss such objections at this time. The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*