(No. 19283.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MORRIS BROOKS, Plaintiff in Error.

*Opinion filed April 20, 1929.*

Nicholas A. Socrates, and Benjamin B. Davis, (Julius Reznik, of counsel,) for plaintiff in error.

Oscar E. Carlstrom, Attorney General, Robert E. Crowe, State's Attorney, and Merrill F. Wehmhoff, (Edward E. Wilson, and John Holman, of counsel,) for the People.

Mr. Justice Dietz delivered the opinion of the court:

This is a writ of error to review a judgment and sentence of the criminal court of Cook county upon the verdict of a jury finding the plaintiff in error (hereinafter called defendant) guilty of robbery. The indictment charges that on the 17th of September, 1927, the defendant assaulted and robbed Alex Bados, a Yellow Cab driver, of the sum of $12 while armed with a dangerous weapon. The defendant entered a plea of not guilty. The jury found him guilty of robbery but that he was not armed with a dangerous weapon. His motions for a new trial and for arrest of judgment were overruled and he was sentenced to the State penitentiary.

The sole ground urged for reversal is that the evidence is insufficient to show the commission of the crime alleged or to sustain the conviction.

The defendant was a cabinet-maker, twenty-three years of age, living at 2436 Ogden avenue, and Alex Bados, the complaining witness, was the driver of a Yellow taxicab, in the city of Chicago. The defendant had known Bados for several years, and during that time he had used the Bados cab some thirty or forty times and was frequently trusted for the fare. The testimony shows that the defendant and Bados were accustomed to meet at a restaurant regularly patronized by the defendant, located at Ogden

avenue and VanBuren street, from which point Bados had on many occasions driven the defendant as a passenger to various points and quite frequently to a Turkish bath establishment situated on Roosevelt road near its intersection with St. Louis avenue. On one occasion the defendant had been at the home of Bados and had assisted him in moving some furniture. The defendant testified that during the period of their acquaintance he and Bados were accustomed to drink together on many occasions, and frequently in a soft drink parlor located at VanBuren street and Winchester avenue. This Bados does not deny and he was not called as a witness in rebuttal. The men were well acquainted and called each other by their nicknames. Bados admits that he had known the defendant, off and on, for several years and that they often met at the VanBuren street restaurant, which location had for some time been regularly used by Bados as a cab stand while waiting for business in that vicinity. Shortly after midnight on the Sunday morning following September 17, 1927, the defendant became a passenger in the cab of Bados in front of the VanBuren street restaurant and instructed Bados to drive to the soft drink parlor at VanBuren street and Winchester avenue. This Bados did. The defendant testified that while there he and Bados each bought one round of drinks and that the bar-tender bought a third round. From that point they drove to the cigar store of George Motto, who testified that Bados and the defendant came into his place of business together and invited him to go with them for "some more drinks," which invitation he refused. By that time it was after two o'clock in the morning. At this point Bados and the defendant quarreled about the payment of the fare, which then amounted to forty-five cents. Bados testified that the defendant requested him to collect the fare from Motto, which he attempted to do, without success. The defendant denies having made such request, and it is admitted that the fare was paid by the defendant. Immediately there-

after the defendant requested Bados to drive to the Turkish bath establishment on Roosevelt road, which Bados did. On arriving at that point the defendant alighted and advised Bados that the defendant was going into the restaurant across the street to get a cup of coffee and invited Bados to accompany him, but this invitation was refused. The defendant then went into the restaurant and purchased a cup of coffee. He remained in and in front of the restaurant approximately half an hour. During all of this time Bados was waiting across the street with his cab. Herman Zeidman, an employee of this restaurant, was a witness for the defendant. He testified that at that time the defendant was quite badly intoxicated and that witness and another employee of the restaurant were trying to get him to go to the bath-house. The defendant then returned to the cab. There was some commotion in front of the bath-house and the cab started away, with the defendant standing on the running-board. The defendant testified that while he was in the restaurant someone had put pepper in his coffee; that he got into an altercation with several persons in the restaurant with reference to this, and that two of these persons followed him across the street as he went to the cab. Bados says that the defendant came running out, with two fellows after him; that Bados asked the defendant for the fare, about which the defendant commenced to quarrel; that Bados started his cab and the defendant jumped on the running-board and began hitting Bados with his fists; that Bados fought back and struck the defendant across the hands and knuckles with a screwdriver and continued to drive until they reached Sacramento street, where they were forced to stop because the signal lights were set against the traffic; that by that time the two other persons who had followed the defendant from the restaurant had come up in another automobile and joined in the fight; that one of these two hit Bados over the head with something which looked like a gun, rendering him unconscious; that when

he regained consciousness he got back in his cab and found that his shirt was unbuttoned and torn in front and that $12, which he had in his front shirt-pocket, was missing.

The witness Zeidman testified that he and a fellow-employee were the two persons who followed the defendant from the restaurant and who afterwards followed the cab in the other automobile; that they were apprehensive that the defendant in his drunken condition would fall or be thrown off the running-board of the cab and be injured; that they wanted to take him back to the Turkish bath establishment, which they afterwards did, and that in following the cab such was their only purpose. Zeidman further testified that when he and his companion arrived at Sacramento street, Bados had left his cab and was fighting with the defendant; that by that time there had also arrived at the scene some ten or twelve other people, including other Yellow Cab drivers and several Checker Cab drivers, none of whom interfered with the fight; that he saw no gun or other weapon used, and that he got out of his automobile and asked Bados to get back into the cab, which Bados did.

"It was incumbent upon the People in this case to prove the *corpus delicti* beyond a reasonable doubt. The guilt of a person accused of crime cannot rest upon guess, surmise or speculation, but must be proven by evidence establishing beyond a reasonable doubt every material element of the crime alleged." (*People* v. *Burke,* 313 Ill. 576.) Proof sufficient to sustain a conviction of the crime of robbery involves the proof of two distinct propositions: First, that money, goods or other valuable thing was feloniously and violently taken from the person of another by force or intimidation; and second, that it was done by the person charged and none other,—in other words, proof of the *corpus delicti* and the identity of the accused. (*Carlton* v. *People,* 150 Ill. 181; *Campbell* v. *People,* 159 id. 9; *People* v. *Hein,* 315 id. 76.) In the present case there is

not sufficient evidence to show that Bados was robbed, or if he was that he was robbed by the defendant. Bados testified that there was a free-for-all fight, in which he, the defendant and two other persons took part; that he did not see anyone take his money but that he first missed it while he was driving away in his cab after the fight was over. His shirt was torn and unbuttoned in front. It is just as consistent with the circumstances to conclude that the money dropped from his pocket and was lost in the scuffle as that it was stolen. There were a number of persons present at the scene of the fight but Bados made no complaint to them that he was robbed. He testified that he did not know whether anyone took the money or how he lost it. Under this state of evidence the proof is insufficient to establish the commission of the crime charged. (*Carlton* v. *People, supra; Dunn* v. *People,* 158 Ill. 586; *People* v. *Wallace,* 303 id. 504; *People* v. *Burke, supra; People* v. *Wulff,* 313 Ill. 286.) Furthermore, Bados testified that two other persons besides himself and the defendant took part in the fight. If the money of Bados was taken by anyone in the fight, it is just as probable that it was taken by one or both of his two other assailants, with whom it is not shown that the defendant was acting in concert. The rule is, that even though it "be positively proved that one of two or more persons committed a crime, yet if there is any reasonable doubt as to which is the guilty party the accused must be acquitted." (*People* v. *White,* 333 Ill. 512.) The evidence is insufficient to establish either the commission of the crime alleged or the identity of the defendant therewith.

The judgment of the criminal court is therefore reversed and the cause remanded.  *Reversed and remanded.*