Donald A. Hocker, a Minor, Donna Lynn Hocker, a Minor, Harry W. Hocker, a Minor, by Vivian I. Hocker, Their Mother and Next Friend, and Vivian I. Hocker, Individually, Plaintiffs-Appellees, v. Max O'Klock, d/b/a White Mule and Rene Van Nevel, d/b/a Van's Club, Defendants-Appellants.

Gen. No. 11,097.

Second District, Second Division.

February 11, 1958.

Rehearing denied April 3, 1958.

Released for publication April 3, 1958.

415

Frank G. Schubert, of Rock Island, Virgil Bozeman, of Moline, and Sam F. Skafidas, of East Moline (Frank G. Schubert, of counsel) for defendants-appellants.

Robert H. White, of Geneseo, and Eagle & Eagle, of Rock Island, for plaintiffs-appellees.

JUSTICE SOLFISBURG delivered the opinion of the court.

The events culminating in this dramshop suit began at 3:45 A. M. on February 23, 1952, when the body of Donald Hocker was found by a passerby lying in a ditch in Moline. There was a bullet hole behind his left ear and another in his side. His widow, two children and one other child dependent upon him filed a dramshop suit under Chapter 43, Section 135 (Ill. Rev. Stats. 1953) to recover damages for loss of means of support. A trial was had before a jury in the Circuit Court of Rock Island county, and verdicts and judgments aggregating $20,000 resulted. The two dramshop defendants appealed.

Plaintiffs alleged in their complaint and took the position before this court in briefs and arguments that the defendant taverns sold liquor to one Beasley, causing Beasley's intoxication, and that Beasley, while so intoxicated, shot and killed Donald Hocker. The case was tried below and argued and briefed here on the theory that plaintiffs sustained damages by an intoxicated person in distinction to the theory that plaintiffs had been damaged in consequence of the intoxication of Donald Hocker, King v. Haley, 85 Ill. 106, 108.

█ The first point which defendants urge for reversal is that the trial court erred in giving plaintiffs' Given Instruction No. 6, which is in words as follows:

"The court instructs the jury that if you find from the greater weight of all of the evidence that on February 23, 1952, the defendant Max O'Klock, his servants and employees, sold or gave alcoholic liquor to Ralph Beasley and caused or materially contributed to cause his intoxication, and that while so intoxicated, the said Ralph Beasley killed Donald Hocker, and that

417

the plaintiffs were thereby injured in their means of support, then you should find Max O'Klock guilty and award damages in favor of Vivian Hocker, Donald A. Hocker, Donna Lynn Hocker and Harry W. Hocker."

Defendants point out that this dramshop case was brought under the "by theory" and contend that the instruction was erroneous because it did not require the jury to find that the intoxication be the cause of the injury either proximate or remote. Defendants specifically admit that they do not contend that the intoxication must be the proximate cause of the injury, as has been repeatedly held by this and other courts, Cope v. Gepford, 326 Ill. App. 171; Haw v. 1933 Grill, Inc., 297 Ill. App. 37; and Economy Auto Ins. Co. v. Brown, 334 Ill. App. 579. The above cases hold that when the action is for any injury resulting from the direct affirmative act of an intoxicated person, the doctrine of proximate cause has no application and liability accrues upon proof of that fact.

██ Tested in the light of these principles we do not find that plaintiffs' Given Instruction No. 6 above was error. To require that plaintiff qualify his instructing by inserting a phrase to the effect that the intoxication of Beasley must have been the cause of Beasley killing Hocker would be to vitiate the above long-standing and well-reasoned line of authority. We note further that the Defendants' Given Instruction No. 31 contained the same language as the complained of instruction and did not contain any qualification that the intoxication must have been found to be the cause of the shooting. Since defendants' instruction adopted and presented an identical theory to the plaintiffs' complained of instruction, defendants cannot complain that the court did not instruct on some different theory than the one presented by defendants' own instruction, Borst v. Langsdale, 8 Ill.App.2d 88.

418

■ ■ For the reasons above stated, we likewise find that it was not error for the trial court to refuse to give the Defendants' Tendered Instruction No. 19, which in substance instructed the jury that if they found from the evidence that Beasley shot and killed Hocker, before they might find the defendants guilty, they must find that the act of Beasley in shooting Hocker was related to the intoxication of Beasley and, further instructing, that if they found that such an act of shooting was an independent, malicious, wilful act, entirely unrelated to intoxication, then they should find the defendants not guilty. While it is true that all parties to a lawsuit are entitled to instructions on their theory of the case, what the defendants are here contending for is that they are entitled to instructions upon two conflicting theories of the case and that is not and has never been the law.

The most serious point raised by the defendants and relied upon them for reversal is whether or not there was any evidence adduced at the trial that Donald Hocker in fact was shot and killed by Beasley. Defendants contend that there was not.

■ The law is well settled. When all the evidence is considered, together with all reasonable inferences from it, in its most favorable aspect to the plaintiffs, if there is a total failure of proof to support any necessary element of plaintiffs' complaint, then it is the duty of the trial court to direct a verdict for the defendants or to enter judgment notwithstanding the verdict. If, as here, the trial court refused so to do, then it is the duty of this court to reverse the judgment of the court below, Lindroth v. Walgreen Co., 407 Ill. 121; Bartolucci v. Falleti, 382 Ill. 168.

The pertinent evidence most favorable to the plaintiffs may be briefly stated:

Hocker at the time he was killed was 31 years of age and was employed in a factory. On February 22, 1952,

419

Hocker left his home in a 1948 Ford automobile. He was seen at the White Mule Tavern owned by defendant O'Klock from 1:00 P. M. to 7:00 P. M. that date. Beasley arrived at the White Mule at about 2:00 P. M. While at the White Mule, Hocker was seen to play cards, exchange "smart" remarks with Beasley and to drink a large quantity of beer. Beasley played a game of shuffle alley, made a pest of himself at the bar with a lady and also drank large quantities of beer. Both men left the White Mule together at about 7:00 P. M. and both were drunk at the time of leaving.

Beasley and Hocker were next seen when they drove to a service station located next to Van's Club, a tavern owned by the defendant Nevel. Beasley then was driving a 1939 black four-door Buick car. The two men stayed at Van's Club from 7:00 to after 8:00 P. M. Both drank beer at the bar, both appeared "loaded" to a witness, were so drunk they could hardly stand, and finally they were refused service at Van's Club. Between 8:00 and 9:00 P. M. both men left Van's Club together. This was the last occasion that Hocker was ever seen alive.

At 9:32 P. M. the same evening, the Moline police were alerted by a report that a man named Poston had been shot and killed. Then at 1:16 A. M. the morning of February 23, 1952, another report was received by the police that a man was asleep in his car with the motor running. Two police officers checked this report and found Beasley sleeping in his Buick. The officers woke Beasley and searched him and the car at the spot where Beasley was found. The officers observed that Beasley had been drinking, that he had vomited and that he had otherwise soiled his clothing. No blood was observed in or on the Beasley car. No gun was found in the car, although the glove compartment area was not searched by the officers. The two officers directed Beasley to move on and followed him

downtown, leaving Beasley parked under the bright lights of a supermarket parking lot after again searching him at the parking lot.

At 3:45 A. M. on February 23, 1952 Donald Hocker's body was found lying in a ditch at 32nd Ave. and 41st St. in Moline. The body was stiff and cold; rigor mortis had set in. Hocker had been dead, in the opinion of one witness, about four or five hours.

 The witness who so testified was the coroner of the county, one Banning. Banning's sole qualification for giving an opinion as to the time the deceased had been dead was that over a period of 11½ years he had processed between 450 and 500 death cases a year. Based upon his observations at the scene, his visual observation of the body, the fact that after he got Hocker to the funeral parlor, he found that rigor mortis had set in, and his opinion that the temperature of the weather is the only thing that alters rigor mortis, Banning concluded that Hocker had been dead between four and five hours. The defendants in their briefs take issue with the accuracy of Coroner Banning's testimony and contend that, because he did not qualify himself as an expert in determining the time of death, his testimony should not have been received. While the qualifications and the testimony of Coroner Banning left something to be desired, it is our opinion that his opinion was properly admitted in evidence within the discretion of the trial court. We find no clear abuse of such discretion, People v. Spencer, 264 Ill. 124; Evanston Best and Co., Inc. v. Goodman, 369 Ill. 207.

The post mortem developed that Hocker had been shot twice with .38 caliber bullets, once above the left ear and once in the abdomen. Either wound could have killed him. A tire mark was observed close to Hocker's body off the traveled part of the road in the

421

dirt. This mark was identified by a witness as having been made by a "Firestone" brand tire.

Glenn L. Peterson, a detective sergeant with the Moline Police Department was assigned to investigate the Hocker and Poston killings. Peterson arrested Beasley in London Mills, Illinois, on March 14, 1952, three weeks after Hocker was killed.

At the time of the arrest or just prior thereto Beasley's car was searched as an incident to his arrest. For the purposes of this opinion, we must assume that the car searched was the same car driven by Beasley on the night when he was last seen with Hocker and the same car referred to by all witnesses, although the witnesses disagree upon the year of the car. Upon the search by Peterson, a .38 caliber revolver was found wedged between the rear of the glove compartment and the ventilator cowl. It was discovered that both rear tires of the Beasley car were of "Firestone" design, one original equipment and one a "Firestone" recap.

An attempt was made to introduce ballistics evidence to relate the weapon to the Hocker killing. However, this attempt was not successful, for not only was the ballistics report inconclusive but the examiner was of the opinion that the bullets that killed Shirley Poston could have been fired from a .38 revolver of the kind found in the Beasley car.

This is the entire evidence favorable to the plaintiffs. From this evidence and the reasonable inferences to be drawn therefrom we are asked to hold that there was some evidence from which the jury could find that Beasley in fact shot Hocker and that the trial court therefore was correct in denying defendants' motions for directed verdict and that part of defendants' post trial motions which called for the entry of a judgment notwithstanding the verdict.

 While a plaintiff is only held to the duty to prove his case by the highest and best evidence within his power, O'Brien v. Chicago & N. W. Ry. Co., 329 Ill. App. 382, a verdict must not be based upon speculation, conjecture or surmise, and it is axiomatic that a presumption cannot be based upon a presumption or an independent inference on another inference. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances themselves must be proved and not presumed, Pastore v. Sasso, 317 Ill. App. 538.

 A presumption is an inference which common sense draws from the known course of events or from circumstances usually occurring in like cases or the experience and course of conduct in human affairs, Johnson v. Pendergast, 308 Ill. 255; McCagg v. Heacock, 34 Ill. 476.

There is no direct evidence that Beasley in fact killed Hocker. There is a total failure of proof of any circumstances which could give rise to any presumption or reasonable inference that Beasley in fact killed Hocker.

Thus, that Beasley and Hocker became intoxicated in the taverns of the defendants and exchanged "smart" remarks cannot give rise to a reasonable inference that the former shot the latter. The record is entirely bare of any evidence of any altercation between them. When last seen together at Van's Club, both men were extremely intoxicated, but there is no evidence of any threats, any blows or any fighting.

That Beasley and Hocker left Van's Club together between 8:00 and 9:00 P. M. certainly did not permit a reasonable inference that Beasley shot Hocker at some place never established by the proof and left his body at still a third place. Nor can that fact permit an inference, based on circumstances which usually occur in like cases, that in fact since the body of Hocker

when found had been dead four to five hours that Hocker must have been shot by Beasley between 11:00 and 12:00 P. M. the previous evening. Any number of people might have shot Hocker in the unaccounted for minimum two hour interval between 9:00 P. M. and 11:00 P. M.

It was proved that Hocker was killed by a .38 caliber bullet. Three weeks after Hocker was killed *a* .38 caliber pistol was found in Beasley's car. There is a total lack of proof connecting the bullets that killed Hocker with the gun found in Beasley's car.

■ There is likewise a total failure of evidence to place the gun in Beasley's possession the evening of the slaying. Instruments allegedly used in the commission of a crime must be connected up with the accused, People v. Berkman, 307 Ill. 492; People v. Urban, 381 Ill. 64. The fact that a gun was found in Beasley's car three weeks after the date of the slaying cannot be said to be reasonable basis for the two inferences that Beasley possessed the gun on the date of the slaying and that he used it to kill Hocker. Certainly the evidence that the police officers, who searched Beasley's car on the evening on which Hocker was later found to be slain, did not search the area of Beasley's car where the gun in fact was found some three weeks later is not proof that the gun was in Beasley's car at the earlier time.

The evidence that another man named Poston was killed the same evening by a person unidentified standing unexplained and unconnected in the record is of no inferential value whatsoever.

It is true that Firestone tire marks were observed at the spot where the body of Hocker was found and that Beasley's car three weeks later was found to have Firestone tires on the rear wheels. We may observe that "Firestone" tires are in common use on hundreds of thousands of cars. No casts were taken of the tire

marks at the scene, and there is thus no evidence to connect Beasley's tires with the marks. There was in any event an entire failure by plaintiffs to connect the marks found at the scene with the tires found on Beasley's car. Compare Haley v. State (Tex. Cr. App.) 209 S. W. 675, 3 A. L. R. 779, where casts made of tire marks at the scene proved identical with casts taken of the defendant's tire treads.

In People v. Zammuto, 280 Ill. 225, one Caltagerone was tried for the killing of Tarantola. Immediately after the murder two men were seen fleeing from the scene of the accident. Witnesses established that one of the men was larger than the other and wore a gray mackinaw. Police followed the course of the fleeing men and arrested Caltagerone in the city shortly after the murder had been committed. A jury returned a verdict finding both defendants guilty of murder. On appeal, the Supreme Court stated as follows (pages 228, 229):

"When Caltagerone was arrested he was wearing a gray mackinaw and the police took one of his shoes which was a size 8 or 8½, of a common make called the 'Walkover' and tried it in the tracks in the snow and found that it corresponded substantially with the footprints. They searched him and found nothing but an ordinary jack knife and there was no evidence that he had nor owned any revolver. Neither the wearing of the gray mackinaw nor the evidence as to the footprint tended to prove the murder aside from other evidence of identity. It is true that evidence concerning footprints may tend to prove identity, as in the case of Schoolcraft v. People, 117 Ill. 271, where a toe turned inward, or in the manner of walking, as in Carlton v. People, 150 Ill. 181, where the defendant was lame and walked with a kind of hop and the foot he limped on corresponded with the tracks, but such evidence is of no effect where, as in the case of Dunn

425

v. People, 158 Ill. 586, there was no peculiarity of the footprint. In the latter case the court said that any two persons wearing shoes of the same size and number as those described in the evidence, if in the neighborhood, would have been liable to the charge with the same evidence of guilt and that statement is applicable here. Caltagerone's shoes were wet probably a quarter of an inch from the top of the soles, which tended to prove that he had been outdoors, but that applied equally to everyone else who had been out in the snow and slush and had no tendency to prove him a murderer."

The cases cited by the plaintiffs either involved fact situations where there was direct evidence that a supposed intoxicant in fact had assaulted plaintiff's decedent (Osborn v. Leuffgen, 381 Ill. 295) or cases which were tried upon the theory that the plaintiff's decedent had been killed in consequence of his own intoxication (Cope v. Gepford, 326 Ill. App. 171; Haw v. 1933 Grill, Inc., 297 Ill. App. 37); or cases which dealt with entirely unrelated issues (Economy Auto Ins. v. Brown, 334 Ill. App. 579). All of the cases agree that it is the law of this state that when the dramshop action is for an injury resulting from the direct affirmative act of an intoxicated person, the doctrine of proximate cause has no application and that liability accrues *upon proof of that fact* (Cope v. Gepford, 326 Ill. App. 171). None of the cases state, nor do they imply, that the fact of the identity of the assailant can be presumed.

The evidence in the case at bar fails to prove the identity of Beasley as Hocker's slayer. It is sufficient only to prove that Beasley and Hocker became intoxicated in the same taverns, were last seen together at 8:00 P. M., that Hocker was shot and killed with .38 caliber bullets between 11:00 and 12:00 P. M., that Hocker's body was found at 3:45 A. M. the follow-

ing morning at a spot where a car equipped with Firestone tires had passed, and that the car driven by Beasley was found three weeks later to have Firestone tires on it and a .38 caliber pistol within it. The evidence does not prove directly or circumstantially or by any reasonable inference to be drawn from it that Beasley in fact shot Hocker. Beasley could have shot Hocker between 9:00 and 11:00 P. M. on the night in question, but so could anyone else in Moline owning a car with Firestone tires and a .38 caliber gun.

It is, therefore, the opinion of the court that the judgment of the Circuit Court of Rock Island county should be reversed and that judgment should be entered notwithstanding the verdict for both defendants. The judgment is accordingly reversed and the cause remanded to the Circuit Court of Rock Island county with directions to enter a judgment notwithstanding the verdict for the defendants.

Reversed and remanded, with directions.

CROW, P. J. and WRIGHT, J., concur.