STATE, Respondent, *v.* RIGGS, Appellant.

(No. 4,280.)

(Submitted September 10, 1919. Decided November 5, 1919.)

[185 Pac. 165.]

*Criminal Law—Homicide—Evidence—Hypothetical Questions—Offer of Proof — Improper Exclusion — Expert Witnesses—Qualification—Circumstantial Evidence—Insufficiency.*

Evidence—Hypothetical Questions—When not Proper.

1. Testimony sought to be elicited by means of hypothetical questions not based upon evidence before the court at the time they are asked is inadmissible.

Homicide—Offer of Proof—Exclusion—Prejudicial Error.

2. Where the state's theory in a prosecution for homicide was that deceased had been struck a blow on the side of the head sufficient to render her unconscious and that combustible material had been put about the body and ignited to destroy the evidence of the crime, rejection of an offer'to prove by one who had been engaged in physical training for twenty-five years, had trained boxers, seen the effects of blows upon the body, *etc.*, that a blow which would produce unconsciousness would ordinarily discolor a large portion of the side of the head constituted prejudicial error.

Same—Expert Testimony—Qualification of Witness.

3. *Semble:* In a matter of common knowledge, such as that the discoloration where a blow has been struck is no more than congested blood showing through the outer skin, the possession of a small amount of common sense would seem to qualify a witness to testify to the fact that a blow on the side of the head sufficiently heavy to produce unconsciousness would ordinarily discolor the part of the face where it was struck.

Same—Circumstantial Evidence—Insufficiency.

4. Evidence *held* insufficient to warrant defendant's conviction of murder in the first degree, under the rule that where circumstantial evidence is relied upon to convict of crime, the circumstances proved must be consistent with each other and with the hypothesis of defendant's guilt, and at the same time inconsistent with any rational hypothesis other than that of guilt. (Mr. Chief Justice Brantly and Mr. Justice Patten dissenting.)

[As to circumstantial evidence, see notes in 62 Am. Dec. 179; 97 Am. St. Rep. 771.]

Criminal Law—Conviction— *Quantum* of Proof.

5. One charged with crime cannot be convicted on conjectures, however shrewd, on suspicions, however justified, on probabilities, however strong, but only upon evidence which establishes guilt beyond a reasonable doubt, *i. e.,* upon proof which logically compels the conviction that the charge is true.

Appeal from *District Court, Yellowstone County; A. C. Spencer, Judge.*

GEORGE T. RIGGS was convicted of murder. From a judgment imposing the death penalty and an order denying a new trial, he appeals. Reversed and remanded.

*Mr. H. C. Crippen* and *Messrs. Nichols & Wilson,* for Appellant, submitted a brief and argued the cause orally.

A hypothetical question must assume the truth of the evidence of which it is composed and upon which it is based. (8 Ency. of Evidence, 620, 621; 11 R. C. L. 581; *Jones* v. *Chicago etc. Ry. Co.,* 43 Minn. 279, 45 N. W. 444; *Duthey* v. *State,* 131 Wis. 178, 10 L. R. A. (n. s.) 1032, 111 N. W. 222; *De Sandro* v. *Missoula Light & Water Co.,* 52 Mont. 333, 157 Pac. 641.)

The evidence is insufficient to sustain the verdict and is contrary to the law. The *corpus delicti* has not been proved. Starkey on Evidence, section 863, announces the doctrine that even when the body has been found, and although indications of a violent death be manifest, it must be fully and satisfactorily proved that the death was neither occasioned by natural causes, by accident or by the act of the deceased himself. (13 R. C. L. 737.) The proof of the criminal agency must rest on substantial proof and not on speculation. (*State* v. *Merrill,* 72 W. Va. 500, 78 S. E. 699; *Dreessen* v. *State,* 38 Neb. 375, 56 N. W. 1024, at 1027; *Taylor* v. *State,* 108 Miss. 18, 66 South. 321; *People* v. *Parmelee,* 112 Mich. 291, 70 N. W. 577; *State* v. *Tettaton,* 159 Mo. 354, 60 S. W. 743; *Martin* v. *State,* 79 Tex. Cr. 393, 186 S. W. 331; *State* v. *Concelia,* 250 Mo. 411, 157 S. W. 778; *Ausmus* v. *People,* 47 Colo. 167, 19 Ann. Cas. 491, 107 Pac. 204.)

The entire evidence creates only a suspicion or probability of guilt. This is not a sufficient basis for a conviction of crime. (*People* v. *Ahrling,* 279 Ill. 70, 116 N. E. 764; *People* v. *Campagna,* 240 Ill. 378, 88 N. E. 797; *People* v. *Rischo,* 262 Ill. 596, 105 N. E. 8; *State* v. *Sieff,* 54 Mont. 165, 168 Pac. 524; *State* v. *Postal Telegraph-Cable Co.,* 53 Mont. 104, 161 Pac. 953; *State* v. *Chevigny,* 48 Mont. 382, 138 Pac. 257.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for the State, submitted a brief; *Mr. Woody* argued the cause orally.

MR. JUSTICE. HOLLOWAY delivered the opinion of the court.

The defendant, his wife, their seven children, and Opal Riggs, a daughter of Mrs. Riggs by a former marriage, lived together on a unit of the Huntley Project, in Yellowstone county. Their home was a frame dwelling, with kitchen and front room on the first floor, and a large bedroom on the second floor. The front room was used by Mrs. Riggs as a bedroom, while defendant and the children slept in the room on the second floor. About 11 o'clock on the night of March 22, 1918, the house was discovered to be on fire. The fire was confined to the kitchen, and, when it was extinguished, Mrs. Riggs was found dead, lying on her back on the kitchen floor in the midst of where the fire had been burning. The defendant was charged with murder, tried and convicted of murder in the first degree. He has appealed from the judgment imposing the death penalty, and from an order denying his motion for a new trial. The principal contentions made by his counsel are that the court erred in the decision of questions of law arising during the course of the trial, and that the verdict is contrary to the evidence.

1. On cross-examination of Dr. Armstrong, a witness for the [1] defendant, the following hypothetical questions were propounded: "Q. Suppose there were articles, such as baby clothes, packed around her head, and then those articles were saturated with kerosene and her face saturated with kerosene and a match struck to her, would you say that her ears would burn off?" And again: "This fire was sufficient, Doctor, to cook the brain through the skull and, in view of that fact, how hot would you say the heart became?" To each of these questions counsel for defendant objected upon the ground that it was not founded upon the evidence, but the objection was overruled, and the wit-

ness was required to answer. In each instance the ruling was erroneous and manifestly prejudicial.

It is apparent that the first question was intended to develop the fact that such a high degree of heat was generated about the head of the deceased that the result could have been obtained only through criminal agency. The purpose of the second question was to show that sufficient heat had been produced to cause the contracted condition of the heart disclosed by the autopsy, and to establish a fact very material to the state's case. In each question the county attorney assumed to set forth certain facts which the evidence proved or tended to prove. There was a great amount of evidence introduced. The record of it consists of 157 typewritten pages. The jurors could not be expected to remember every item of it, or to weigh it with the skill of a trained legal mind. When the trial court overruled the objection, the ruling was tantamount to a declaration from the court that there was 'ample evidence to prove every fact recited in each question, if the jury believed the evidence. But there is not a scintilla of evidence that baby clothes or other articles were about or near the head of the deceased during the time the fire was burning, nor is there any evidence whatever that the brains were cooked. If there is a rule of the law of evidence thoroughly well settled, it is that a hypothetical question must be based upon evidence before the court at the time the question is asked. (*Carman* v. *Montana C. Ry. Co.*, 32 Mont. 137, 79 Pac. 690; Wharton on Evidence, sec. 452; 1 Wigmore on Evidence, sec. 672.)

2. A witness, Button, testified for the defendant that he had [2] been engaged in physical training for twenty-five years; that he had trained wrestlers and boxers; had seen the effect of blows on the body; had seen persons rendered unconscious by blows from the fist; had seen the effects of blows upon the head and had had many cases, in teaching boxing, of discoloration and injury to the muscles by blows. He was then asked this question: "Q. I will ask you if a blow upon the head was given, so as to render a person unconscious, what would be the ordi-

nary result as to discoloration of the head and face?'' An objection to the question was sustained. Defendant then offered to prove that a blow, such as described in the question, would discolor a very large portion of that side of the head and face; that the tissues would be injured and the blood vessels congested with blood. Upon objection by the state the offered evidence was excluded. No possible valid objection could be made to the question. The inquiry was a pertinent one. The theory of the state—and its only theory—was that Mrs. Riggs had been struck on the side of the head a blow sufficient to render her unconscious. The autopsy findings failed to disclose either discoloration of the face or a bruised condition, and the purpose of the offered evidence was to show that the silence of the autopsy record upon these subjects could be accounted for only upon the theory that no such blow had been struck, or, in other words, if such a blow had been struck, its effect would have been apparent and would have been recorded in the autopsy notes. The only excuse for excluding the offered evidence is that the witness had not shown himself qualified to state the facts mentioned in the offer. That the witness was sufficiently qualified to state that a blow on the side of the head which would produce unconsciousness would ordinarily cause discoloration of the face and head cannot be controverted. What additional qualifications were necessary to enable the witness to add that there would be injury or congestion of the blood vessels?

Nothing can so discredit courts of justice as decisions which veil them in a shroud of mystery and shackle their proceedings by technical rules so abstruse that even the members of the legal fraternity cannot understand them. Outside of the courts, anyone in the possession of his mental faculties would be deemed competent to state as a fact that which everyone knows to be a fact. Everyone of common knowledge and understanding knows [3] that the so-called discoloration produced by a blow is nothing but the blood, congested or extravasated, showing through the outer skin, and it would seem in all reason that the posses-

sion of a small amount of common sense would have qualified the witness sufficiently to give the offered testimony.

To deny the defendant the right to introduce this evidence was tantamount to denying him the right to controvert the state's case upon the most important item of it. To whatever extent this evidence would have tended to refute the contention that a violent blow had been administered to the side of Mrs. Riggs' head, to that extent the defendant was denied the right to make any defense. The evidence was most material, and its exclusion could not fail to be prejudicial.

3. The evidence in this case is wholly circumstantial and, in my judgment, entirely insufficient to sustain the verdict. It fails [4] altogether to meet the requirements of the rule that, whenever a conviction is sought upon circumstantial evidence, the circumstances proved must be consistent with each other and with the hypothesis of defendant's guilt, and at the same time inconsistent with any rational hypothesis other than that of guilt (*State* v. *Chevigny*, 48 Mont. 382, 138 Pac. 257; *State* v. *Sieff*, 54 Mont. 165, 168 Pac. 524), or the same rule as stated by other authorities: "Circumstantial evidence, to warrant a conviction of crime, must be of a conclusive nature and tendency, leading, on the whole, to a satisfactory conclusion, and producing a reasonable and moral certainty that the accused, and no one else, committed the crime charged." (*Dunn* v. *People*, 158 Ill. 586, 42 N. E. 47.)

The evidence is not only intrinsically deficient, but its legal insufficiency is emphasized by the facts which it fails to prove or tends to prove. So far as disclosed by the record, the theory upon which the state proceeded was that Mrs. Riggs had been dealt a violent blow on the side of the head sufficient to render her unconscious; that her body was then moved from the front room, where she had been sleeping, to the kitchen, laid upon the floor, her clothing saturated with kerosene, a fire started, and that she was suffocated by the smoke. There is not even a scintilla of evidence to support any other theory. There is not any evidence of a telltale bludgeon with which the blow was

struck; no evidence that defendant's hand showed signs that he had struck her with his fist; no evidence of blood or the odor of kerosene on his clothing; nothing to indicate that he had been near a fire; no evidence of a struggle or outcry; no evidence of any motive on the part of the defendant. There was no contusion on the head of the deceased and no evidence upon the undersurface of the scalp that a blow had been administered. Although defendant slept in the second-story bedroom with eight children, including Opal, the stepdaughter, aged eighteen, and a witness most unfriendly to defendant, there is not a suggestion that anyone heard him leave his bed or the room, from the time he retired at 8:30 until the fire was discovered.

The evidence does not exclude the theory of accidental burning and death from shock. Granting, for the sake of argument, [5] that the facts and circumstances raise conjectures, suspicions and probabilities inconsistent with the theory of defendant's innocence—and I insist that they do not do more—still this court is committed to the doctrine that "a defendant may not be convicted on conjectures, however shrewd, on suspicions, however justified, on probabilities, however strong, but only upon evidence which establishes guilt beyond a reasonable doubt, that is, upon proof such as to logically compel the conviction that the charge is true." (State v. Mullins, 55 Mont. 95, 173 Pac. 788.)

The verdict in this case can rest only upon mere suspicion born and nurtured in the abhorrence which the jury must have felt for a man so brutal in his conduct toward his wife and so cowardly that he would not incur greater risk to save her from their burning house. No useful purpose would be served by setting forth the evidence at length.

Because of the errors herein pointed out, the judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE COOPER concurs.

MR. JUSTICE HURLY: I concur in the result reached by Mr. Justice HOLLOWAY concerning the trial court's rulings as to the

testimony of the witness Armstrong. I think the testimony of the witness Button should have been received, though I do not feel that its exclusion, in view of the record as to the condition of the body of the deceased, was prejudicial error.

Mr. Chief Justice Brantly and Mr. Justice Patten: We dissent. From a careful consideration of the record, we are of the opinion that the evidence was sufficient to justify the verdict, and that no error, prejudicial to the defendant, was committed by the court during the trial. It is therefore our opinion that the judgment and order appealed from should be affirmed.