No. 30,936.

R. M. ANDERSON, *Appellant*, v. U. L. THOMPSON and LAVON THOMPSON, *Appellees.*

(22 P. 2d 438.)

Opinion filed June 10, 1933.

*Bert E. Church,* of Wellington, *W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham,* all of Arkansas City, for the appellant.

*H. W. Goodwin, W. H. Schwinn,* both of Wellington, *J. N. Tincher,* of Hutchinson, and *Riley W. MacGregor,* of Medicine Lodge, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by plaintiff for damages for death of his son resulting from injuries received in a collision of automobiles. The verdict was for defendants, and plaintiff appeals.

On the night of August 8, 1931, Paul Wade was driving eastward in a Ford touring car on highway No. 160, west of Wellington. John Heasty was with Wade. As they approached rising ground, spoken

of as a hill, south of Mayfield, they saw a Ford coupé in the road, headed toward the west, and recognized Floyd Anderson, who was changing a tire on the left rear wheel of the coupé. Wade and Heasty drove by, turned around, drove back, and parked their car behind Floyd's car so the lights of their car would illuminate the rear end of his car.

On August 8 defendant U. L. Thompson went in his automobile from his home in Medicine Lodge to Wellington to meet his daughter Mildred. With him was his daughter Lavon, who is also a defendant. About eleven o'clock at night they left Wellington for home. Lavon was driving the car, and her father was in the back seat. As they proceeded westward on No. 160 at a speed of thirty to thirty-five miles per hour, they came over the brow of the hill south of Mayfield and saw in the distance west of them the tail light of an automobile. Presently a car approached from the west with bright lights, which gradually blinded Lavon. She reduced the speed of her car to about twenty to twenty-five miles per hour, but kept it in motion forward. When the bright lights had passed by she saw a standing car ahead of her and about twenty feet away. She immediately applied the brakes and turned to the left, but was unsuccessful in avoiding a collision. Her car struck the Wade car, which in turn struck the Anderson car, and Floyd Anderson sustained injuries which caused his death.

The jury was not required to make special findings of fact. The evidence was irreconcilably conflicting with respect to important details of the accident, and under the well-understood rule regarding appellate review, the general verdict must be regarded as based on the evidence most favorable to defendants, and the inferences most favorable to defendants derivable from the evidence.

Plaintiff requested an instruction to the jury that it was the duty of the driver of the Thompson car to stop when vision was inhibited by blinding lights of the car approaching from the west. If this were the peremptory rule governing night automobile driving, a person obliged to leave Topeka after dark to make a trip to Kansas City on highway U. S. No. 40 might not reach his destination much before morning. Clearly such a rule should not be applied to a driver who, notwithstanding the blinding lights, could know to a certainty there was no obstruction immediately beyond the point of relief from the dazzling lights. If a vigilant driver, proceeding at a moderate rate of speed, should be reasonably sure he might safely

go forward without stopping, he would not necessarily be negligent in doing so. Therefore the question ultimately resolves itself into one of reasonable care under all the circumstances. In this instance the subject was fairly covered by an instruction to the jury that a motorist driving at night, unable to see because of bright lights of an approaching car, should correlate speed and ability to stop with ability to see.

The driver of the Thompson car saw the tail light of an automobile in the distance down the road ahead of her. She testified she was not able to determine definitely whether the light was stationary or was moving, but under the circumstances she described she believed the light was moving. There is room for the inference she saw the tail light of the Wade car as it moved in behind the Anderson car. Then the bright lights of the approaching car rendered her unable to see, and she reduced speed. When the bright lights passed by she was immediately confronted with obstruction to her progress. Her rate of speed, although reduced, had brought her unexpectedly to the Wade car. The jury and the district court were of the opinion she was not guilty of actionable negligence. While she did not exercise the highest vigilance, it is not easy to say there was no room for difference of opinion and the court should have taken the case from the jury on the ground she was guilty of negligence as a matter of law.

Leaving the subject of negligence on the part of defendants at one side, there was evidence warranting the jury in finding the accident would not have occurred but for the negligence of Floyd Anderson.

As indicated, John Heasty was in the Wade car, which approached the Anderson car from the west, passed by, turned around, and went back to the Anderson car. There was testimony that the highway was thirty-four feet wide, with ditches on each side. The Anderson car had a flat tire, and Floyd was changing the tire. Heasty testified as follows:

"We parked our car back of Floyd's car with our lights on his left hind tire; our purpose in doing this was to give Floyd our lights.

"Q. When you pulled in behind him, how far to the west was his car from you? A. I should say about ten or fifteen feet.

"Q. Did you have any trouble going around Floyd's car? A. Yes, sir.

"Q. Was his car obstructing the road? A. You had to turn out around it."

The Wade car, whose tail light Lovan Thompson saw, was headed slightly toward the south. She was driving north of the center of

the road about the same distance from the center as the Wade car, and she gave it as her judgment the south wheels of the Wade car were within two or three feet of the center of the road.

The court instructed the jury as follows:

"You are further instructed that the owner or operator of a motor vehicle upon a public highway has the right to stop his vehicle in such highway, and where a motor vehicle is in need of examination or repairs and is able to proceed safely under its own power to the side of the highway, the operator in making a stop for repairs is under a duty to see that he selects a suitable place where his vehicle will not constitute an obstruction of the highway, or a source of danger to other users of the highway, and to exercise the caution, care and prudence that an ordinarily reasonable and prudent person would, or should, exercise in this respect, and the usual place for stopping or parking is at the side of the highway, on the right-hand side in the direction in which the automobile has been traveling, and as much out of the line of travel as possible, and off the main-traveled portion of the highway, when this may be done. The failure of one who stops his car for repairs to perform this duty in a reasonably careful and prudent manner would constitute negligence on his part and prevent a recovery for any injuries or loss which he might have sustained."

Plaintiff does not complain of this instruction and could not well do so. The right front wheel of the Thompson car struck the left rear wheel of the Wade car, and it is a fair and reasonable inference that if the Anderson car had been at the side of the road where it should have been, the Thompson car would have passed safely by.

Plaintiff contends the court erred in giving an instruction to the jury on the subject of sudden emergency. Plaintiff requested instructions on the subjects of unavoidable accident and sudden emergency. The court gave admirable instructions on both subjects, and plaintiff is not now in position to complain.

In the instruction relating to sudden ·emergency the court said a motorist should exercise every reasonable precaution to insure safety of others traveling on the highway, but the motorist may assume others using the highway will exercise ordinary care and will always be alert to avoid collision. Plaintiff complains of the latter part of this portion of the instruction.

In the opinion in the case of *Ratcliffe v. Speith*, 95 Kan. 823, 149 Pac. 740, this court said:

"It is true, also, that motorists may ordinarily assume that pedestrians or others using the street will exercise ordinary care. They have no right, however, to assume that the way will always be clear and travelers will always be alert to avoid collision. On the other hand, it is their duty to be vigilant

and careful to avoid injuring those who are sharing the use of the streets with them." (p. 825.)

That was said with respect to the conduct of a motorist who injured one of a group of children playing in the street on the way home from school. The syllabus of the decision reads:

"Ordinarily it is the duty of a person operating an automobile in a street in which there is a group of children playing not only to bring his automobile under control, but to give warning of approach and to manage his car with reference to the risk that children may not exercise the care for their own protection that adults are expected to exercise." (Syl. ¶ 1.)

Contributory negligence on the part of Floyd Anderson prevents recovery by his father, and for present purposes the action may be regarded as one by Floyd Anderson. Manifestly one chargeable with the duties and responsibilities of operator of a motor vehicle on a highway may not, in his own action against another motorist, relieve himself of the consequences of contributory negligence on the ground the defendant ought to have anticipated the plaintiff would be guilty of negligence contributing to his injury.

Plaintiff contends a new trial should have been granted because of prejudice and misconduct on the part of some of the jurors. Two or three of the jurors said they would not sign a verdict of guilty because plaintiff's attorney had the case on a percentage basis and they would not give him a dime.

Public policy forbids that after the jury has tried the case the court shall, on motion for new trial, proceed to try the jury. A verdict may not be impeached by an inquiry which reaches a juror's views or the reasons for those views (*L. & W. Rly. Co. v. Anderson*, 41 Kan. 528, 21 Pac. 588), or which reaches what influenced those views (*Matthews v. Langhofer*, 110 Kan. 36, 202 Pac. 634; *Jones v. Webber*, 111 Kan. 650, 207 Pac. 837; *Stone v. City of Pleasanton*, 115 Kan. 378, 223 Pac. 312). Besides that, the jury being what it is, jurors will act like human beings in the jury room, and will indulge in bluster and hyperbole and animated irrelevancies. Not only does the law presume a juror respects the obligation of his oath and votes his convictions, but generally he in fact does so; and due allowance must be made for some exuberance in jury-room discussion or the court must keep on granting new trials in important cases until a perfectly spiritless jury can be secured. In this instance there was some evidence that at no time did the jury regard Lavon Thompson as to blame for the accident. The district court

doubtless knew its jury. In denying the motion for new trial the court said it was satisfied the verdict was correct and was the true verdict of the jury; and in the face of this finding this court cannot say plaintiff suffered prejudice to his substantial rights.

There is nothing else in the case of sufficient importance to require discussion.

The judgment of the district court is affirmed.