ELMER P. FOLKEN, APPELLEE, V. CLAYTON PETERSEN, DOING BUSINESS AS CLAYTON PETERSEN TRANSFER, APPELLANT.

1 N. W. (2d) 916

FILED JANUARY 16, 1942. No. 31191.

*Robert M. Armstrong, Wiltse & Wiltse* and *Hawxby & Griffiths,* for appellant.

*John R. McCormack, G. F. Nye* and *Paul P. Chaney,* contra.

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and YEAGER, JJ., and ELLIS, District Judge.

ELLIS, District Judge.

This action arises out of a collision between two gasoline transports followed by fire which destroyed both transports and both cargoes. Both parties sought to recover their loss. Verdict was in favor of the plaintiff. Defendant appeals.

The accident happened on highway No. 75 south of Auburn at about 1 o'clock a. m., June 3, 1940. The road was dry and driving conditions otherwise normal. Plaintiff's truck was being driven by one Liles and defendant's truck by one Gibb. The plaintiff's truck was proceeding north and was being followed by defendant's truck and had been so followed for about six miles. The parties stipulated that the value of plaintiff's transport and cargo was $5,126.13 and the value of defendant's transport and cargo was $3,724.59. The amount of the verdict was $4,100.90.

It appears from the evidence that plaintiff's truck was carrying the greater load of gasoline and that the gross weight of plaintiff's loaded truck exceeded that of defendant's truck by some 4,900 pounds.

The plaintiff's evidence in substance is as follows: His truck outfit was new on April 12, 1940. It had several red lights on the rear and a red stop light turned on by pressure on brake pedal. The driver testified that just prior to the accident he heard a loud thumping noise, could not tell what it was by listening, but thought it indicated a flat tire, rear end trouble, a wheel bearing or something else; that he blinked his lights and put his brakes on lightly so that the stop light would come on; that he then rolled approximately 400 feet and came to a "slow rolling stop." After the truck stopped Liles testified that he set the brakes, got a flash light and stepped out on the running board to see what the trouble was and to examine the shoulder and see if it was safe to pull onto with his load. At that time his truck was on the pavement with right wheels on right edge. He estimated the width of the shoulder at 5 to 5½ feet; that in just a matter of two or three seconds the other truck struck his truck.

After the impact the defendant's truck traveled approximately 50 feet beyond plaintiff's truck.

The plaintiff's driver was aware of the other truck following and stated that it was approximately 400 feet behind when he first blinked his lights and started to slow up his truck to make the stop; that his braking was not continuous but by pushing on the pedal and letting it up several times, each of which operations would turn the stop light on and off. From the point where he first applied his brakes the road was up-grade for 300 feet and then leveled off. The collision occurred approximately 100 feet beyond the crest of the grade. After the collision plaintiff's driver observed that the other truck was on fire, so he got behind the wheel and drove his truck ahead 150 feet.

When he stepped out on the running-board after stopping the first time, the headlights of defendant's truck were headed straight north directly behind his truck, but when about 15 or 20 feet from his truck they swung off to the northwest.

That after the accident he had a conversation with Gibb,

in which the latter said he did not see Liles blinking his lights, did not see a thing until he was right on him and "it does look awful foolish for me to hit that now, doesn't it."

For the defendant the evidence is substantially as follows: The defendant testified that he had tested his truck's brakes and at a speed of 30 miles an hour on level concrete it could be stopped in a distance from 16 to 25 feet. The speed of this test should be noted in connection with testimony of his driver. That the earthen shoulder at the point involved was 5 or 6 feet wide, in good condition and hard and dry.

The defendant's driver testified that his truck was equipped with headlights and standard clearance lights on the front and that these lights were on. His headlights showed down the road 200 feet. With reference to his speed as compared with that of plaintiff's truck he said: "Q. Now, as you followed behind the Folken transport I believe you stated about thirty miles an hour, you said you were about three hundred feet behind it? A. Approximately. Q. Now, did you,—how was the speed of your transport at that time compared with the speed of the one in front of you? A. Well, it was all right, except when we were going up the hill; I would hold back and I had been trying to get around him, see? On a hill, I ran up on him and I didn't have to cut down in gear, see? I was trying to pass him. Q. Now, what was the reason why you gained on him going up the hill? A. Well, I had the lighter load than he did." As he came up the grade immediately beyond which the collision occurred, "A. Well, I was crowding,—I wanted to get around him, we was getting up right on top, but I couldn't get so we was clear yet and I hadn't pulled out or give him any signal that I was going to pass." At that time he was going 20 or 25 miles an hour and was within 30 or 40 feet of the transport ahead. He did not see any signals by the driver ahead, was looking ahead and was also looking behind in his mirror. Lights on front and rear of plaintiff's truck were lighted. He did not notice

any change of speed by the transport ahead that indicated that he was slowing up or stopping. When the other driver applied his brakes, "I knew I was right on him, I seen it wouldn't do any good to try to stop because I didn't have room, I just whirled it." His truck stopped about 30 feet beyond the point of collision. With reference to his conversation with Liles he said, "I recall making the statement that, I says, it probably looks foolish to us, somebody to us, the way it happened," and "that it probably looks foolish to bystanders."

He further testified that when he first saw any indication that the truck ahead was stopping it was 15 feet ahead of his truck. It was his desire and intention to pass the other truck. When he got to the crest just before the collision he was approximately 15 or 20 feet behind but had not yet given any signal of intention to pass.

In the light of the evidence as summarized above, the defendant makes assignment of some ten errors. Several of these are not discussed in the brief or otherwise urged. We have examined all of the assignments and find it unnecessary to discuss those not hereinafter mentioned.

The defendant urges error in the giving of instruction No. 9 which is as follows: "The violation of the law or rules of the road as to speed or operation of a motor vehicle in other respects, is not of itself negligence on the part of the violator, but is evidence to be considered by you, together with all other facts and circumstances in evidence in the case, to enable you to determine whether or not such violator, if you find from the evidence there was a violation, was guilty of negligence in and about the accident involved in the case."

The defendant contends that there was no evidence of excessive speed on the part of the driver of defendant's truck and, therefore, that the instruction submitted an issue not supported by any evidence. From an examination of the law of this state (see Comp. St. Supp. 1939, sec. 39-11,101) it is clear that miles an hour alone do not determine the lawfulness of a particular rate of speed.

Quoting from the statute: "No person shall drive * * * at a speed greater than is reasonable and prudent under the conditions then existing." Without quoting further, it will be noted that in this state no speed, including the *prima facie* maximum stated, shall be lawful when it appears that it is unsafe, and that it is made the duty of drivers to reduce any speed in the face of certain hazards. The statute is substantially a declaration of the general law of negligence to the effect that any speed is excessive when it is beyond that dictated by the existing circumstances and the duty of all persons to exercise due care.

In the light of the evidence that defendant's truck had been closing up on plaintiff's truck on the hills, the distance between them and the distance traveled by defendant's truck after the impact, we cannot say that there was no basis for a finding by the jury of excessive speed. We find no error in the giving of instruction No. 9.

The defendant assigns as separate errors the giving of instruction No. 13—that the court erred in submitting the last clear chance doctrine—and that the court erred in the language used in the instruction. It is apparent that the defendant relies chiefly upon these assignments for reversal and they will be discussed together.

Instruction No. 13 is in the following language: "You are instructed that when any person is in a place of danger, whether negligent or not, one who knows or might know under all the circumstances at the time, must use reasonable ordinary care to avoid the injury. Therefore you are instructed that if you find that the plaintiff car was in a position of danger, from which it could not be extricated and if the defendant's driver observed the plaintiff's car position of peril, or by the exercise of reasonable care could have observed it, then it was the duty of defendant's driver to use reasonable and ordinary care, under the circumstances, to avoid the collision."

The defendant contends that the doctrine was not applicable to the situation because, as defendant contends, the plaintiff's driver was negligent in stopping under the cir-

cumstances, and in not pulling off the pavement and onto the shoulder, and that his negligence continued up to the time of the actual collision. Defendant cites from 4 Blashfield, Cyclopedia of Automobile Law, 559, sec. 2814, as follows: "If plaintiff's negligence is still active and a contributing factor in causing the injury, he cannot recover under the last clear chance doctrine." Defendant also cites *Long v. Guilliatt,* 137 Neb. 199, 288 N. W. 689. In that case the action was for personal injuries only and the court decided that there was a basis in the evidence for a finding that up to the very moment of collision the plaintiff had an opportunity to get out of his stalled car and thus avoid injury to his person.

There can be no doubt as to the correctness of the proposition that, where the negligence of the injured party is contemporaneous and active up to the very moment of injury, and thus contributes to cause the injury, the doctrine of last clear chance does not apply.

It appears that the defendant is confusing the continuing consequences of the contended negligence of the plaintiff with continuing active negligence. When plaintiff's driver had brought his truck to a stop, and even though he was negligent in doing so under the circumstances, his action thereupon ceased and his active negligence likewise ceased, although the consequences or perilous situation resulting from his negligence continued.

The doctrine in its name and application generally involves an assumption that the injured party has negligently exposed himself to an injury.

The plaintiff's driver testified that he blinked his lights, operated his stop light signal, slowed down gradually, came to a full stop, set the brakes, got a flash light, stepped out on the running-board, and then in a matter of two or three seconds the collision occurred. If the jury believed this testimony, it constituted ample basis for a finding that there was time for defendant's driver to discover the dangerous situation if he had been exercising due care. This evidence, coupled with defendant's testimony that at 30

miles an hour his truck could be stopped within 16 to 25 feet and the testimony of his driver that he was driving 20 to 25 miles an hour and was 30 to 40 feet behind plaintiff's truck, plus the fact of the unobstructed left half of the highway, constituted a basis for a finding that the defendant's driver had an opportunity to avoid the collision.

"The doctrine of the last clear chance applies in those cases where there is negligence of the defendant subsequent to the negligence of the plaintiff and the defendant's negligence is the proximate cause of the injury." *Parsons v. Berry*, 130 Neb. 264, 264 N. W. 742.

We therefore conclude that the trial court did not err in submitting the issue based upon the doctrine of the last clear chance.

Turning now to the language and substance of instruction No. 13, which is vigorously criticized by the defendant, we may say that the instruction might have been improved in the language used and by some amplification.

"Mere inexactness in the language of an instruction is not ground for reversal, where the jury were not misled." *In re Estate of Noren*, 119 Neb. 653, 230 N. W. 495.

"Where an instruction is substantially correct, a case will not be reversed because it is possible to improve the phraseology thereof." *Kelso v. Seward County*, 117 Neb. 136, 219 N. W. 843.

A comparison of the instruction here under fire with the one examined in *Parsons v. Berry, supra,* will show that there is no essential difference in the substance of the two instructions, except that in the *Parsons* case the instruction ended with an affirmative direction that upon a finding that the defendant failed to use due care the verdict should be in favor of the plaintiff. In the instant case there was no such affirmative direction but merely advice that, if the defendant's driver was or should have been aware of the dangerous situation, it was his duty to exercise ordinary care under the circumstances to avoid the collision. In instruction No. 16 the court correctly defined "ordinary care" as "that amount or degree of care which common,

prudent and proper regard for one's own safety and the safety of others require under the circumstances shown by the evidence." To the extent that the instruction did not contain an affirmative direction, it was more favorable to the defendant than the instruction in the *Parsons* case which was approved.

It is apparent that defendant's dissatisfaction goes more to the credibility of the evidence given by plaintiff's driver than to the form of the instruction criticized, since the defendant in his brief says: "If there was anything about the movement or actions of the plaintiff's truck that would make it obvious to a following driver, by the exercise of the ordinary powers of observation, that plaintiff's truck was going to stop, then it would, of course, be the duty of the defendant's driver to observe that situation and drive his truck accordingly." The credibility of the witnesses and the weight to be given their testimony were for the jury.

We find no prejudicial error in instruction No. 13. The judgment is amply sustained by the evidence and is

AFFIRMED.