WESTERN CASUALTY & SURETY COMPANY, Appellant, vs. DAIRYLAND MUTUAL INSURANCE COMPANY and another, Respondents.

*June 5—June 22, 1956.*

For the appellant there were briefs by *Frank L. Morrow* of Eau Claire, and *Schmitt, Gullickson & Wurster* of Merrill, and oral argument by *Stuart G. Gullickson*.

For the respondents there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Richard P. Tinkham*.

CURRIE, J.   The learned trial judge filed a memorandum decision in which he determined that the negligence of the deceased Ulrich Grund, was equal to, or exceeded, the negligence of his son, Roland, as a matter of law.

While there is considerable conflict in the testimony, such conflict must be resolved in plaintiff's favor in considering whether it was error for the trial court to have directed a verdict. This is because a verdict should only be directed against a plaintiff where plaintiff's evidence, giving it the most favorable construction it will reasonably bear, is insufficient to sustain a verdict in plaintiff's favor. *Pelitsie v. National Surety Corp.* (1956), 272 Wis. 423, 427, 76 N. W.

(2d) 327, and *Radmann v. Chicago, M. & St. P. R. Co.* (1890), 78 Wis. 22, 26, 47 N. W. 97. Therefore, in setting forth the facts leading up to the accident, and of the accident itself, we shall state the version thereof most favorable to the contentions advanced by plaintiff on this appeal.

Ulrich and Marie Grund resided on a 170-acre farm situated approximately one mile south of the place where the accident occurred. The accident happened on a Friday evening, which was the night of the week on which the Grunds customarily did their weekly shopping in Merrill. The family automobile stood in the name of Mrs. Grund and she did the driving. They proceeded into Merrill where they did some shopping which had been completed about 9 p. m. They then stopped at the Happy Pines tavern which was located on Highway W south of the city of Merrill where they enjoyed a fish fry. Mrs. Grund drank a coke and Mr. Grund had a couple glasses of beer. The couple left the Happy Pines around 10:30 p. m. and proceeded southward on Highway W toward their home. This is a black-top highway 20 feet wide with a narrow gravel shoulder approximately one foot or 18 inches in width. The ground was covered with snow and the pavement was icy in places. Mrs. Grund drove slowly. At a point approximately one mile north of the Grund home the automobile, without fault on the part of Mrs. Grund, skidded on ice and crossed to the wrong side of the highway and came to a stop facing in a southeasterly direction with the front wheels up against a small snowbank. Most of the car was still on the paved portion of the highway effectively blocking the east half thereof.

Mrs. Grund endeavored to use the power of the engine to move the car but without avail. The highway sloped eastward so that the front of the car was lower than the back and the rear wheels spun on the ice without attaining traction. Mrs. Grund then removed the keys from the ignition switch and walked southward along the highway to the Grund home,

leaving Mr. Grund sitting in the front seat. The record is entirely silent as to what conversation, if any, took place between Mr. and Mrs. Grund preliminary to her departure. Mr. Grund was fifty-nine years of age, and, while he had had heart trouble for the preceding two years, which had necessitated his cutting down some on his farm work, he still continued to do much of the farm work up to the time of the accident.

While there was a tavern located about four-tenths of a mile north of the point of the accident and a farm neighbor living a short distance to the south of the accident, Mrs. Grund made no attempt to obtain help from either of such two sources. She arrived at her home about fifteen minutes after the accident occurred. The son, Roland, who was nineteen years of age, had left earlier in the evening for a date with his girl friend, and Mrs. Grund waited for Roland to come home so that she might obtain his assistance in going back to the scene of the accident and attempt to move the stalled vehicle.

Mrs. Grund had left both headlights of her car burning on high beam, but such lights did not point southward along the highway but off to the eastward into the woods which bordered the highway. About fifty-five minutes after Mrs. Grund left her stalled automobile the son, Roland, arrived from the north in his own automobile on his way home from his date. He recognized the stalled vehicle as belonging to his mother and stopped his own car opposite the same to render assistance and had a few words of conversation with his father who was still seated in Mrs. Grund's car.

About this instant the Turner car rounded a curve approximately 1,700 to 1,800 feet distant to the south. From such point to the stalled vehicle the highway ran straight with no intervening dips or hills. Roland claims that he then got back into his own car and drove it ahead approximately 150 to 200 feet and stopped in the west half of the highway and

attempted to stop the oncoming Turner car by waving his hand. While Turner admits having seen Roland waving when it was too late to avoid the collision, Turner insists that Roland's car was parked opposite his mother's car at the time the collision occurred so that Roland's car, together with his mother's car, effectively blocked the entire highway.

The front of the oncoming Turner car struck the right side of Mrs. Grund's automobile about at the center pushing it northward five to eight feet. Immediately after the accident Ulrich Grund lay unconscious on the black-top pavement a few feet north of the left rear fender of his wife's automobile. All four doors of the Marie Grund car were found closed after the accident. There, therefore, is an inescapable inference that Ulrich, upon seeing the lights of the approaching Turner automobile, had gotten out of the car and gone around to the left side thereof at the time the impact occurred.

The specific acts of negligence with which the plaintiff charges Roland Grund are that he parked his vehicle on the traveled portion of the highway in such manner as not to leave 15 feet of usable roadway, in violation of sec. 85.19 (1), Stats.; and that he had also failed to dim his headlights as required by sec. 85.06 (16), with the result that the bright lights of his vehicle had blinded Turner, preventing the latter from seeing the stalled Marie Grund car in time to have avoided the collision.

We have no hesitancy in holding that the deceased Ulrich Grund was extremely negligent. In the first place he remained seated in the vehicle of his wife which was stalled on the wrong side of the highway for a period of fifty-five minutes. Secondly, he had available fifty-five to sixty seconds from the time the lights of the approaching Turner car first became visible until the impact in which to have removed himself from the car to a place of safety and yet he failed to do so.

The brief of the plaintiff cites the cases of *Scory v. LaFave* (1934), 215 Wis. 21, 254 N. W. 643, and *Williams v. Monroe County* (1953), 265 Wis. 10, 60 N. W. (2d) 358, in support of its contention that Ulrich Grund was not guilty of negligence in remaining in the car and not removing to a place of safety prior to the collision. We consider the facts in these two cited cases to be so dissimilar to those in the instant case as to render such cases not in point here.

Any negligence of Marie Grund also must be added to that of Ulrich Grund in making the statutory comparison with the negligence of Roland Grund. This is because any right of contribution on the part of the plaintiff Insurance Company, as insurance carrier of Turner, arises out of Marie Grund's cause of action for wrongful death. Therefore, her own negligence as beneficiary of the cause of action for wrongful death must be compared with that of the tort-feasor from whom recovery is sought. *Hansberry v. Dunn* (1939), 230 Wis. 626, 638, 284 N. W. 556. A more-recent decision in which this same principle was applied is *Quady v. Sickl* (1952), 260 Wis. 355, 51 N. W. (2d) 6, 52 N. W. (2d) 134.

Assuming that the Marie Grund automobile at the time it skidded into the snowbank and became stalled so that it could not be removed under its own power constituted a *"disabled"* vehicle within the meaning of sub. (8), sec. 85.19, Stats., this does not mean that Mrs. Grund could leave such vehicle stalled indefinitely on the highway without being guilty of negligence. Such subsection provides:

"The provisions of this section shall not apply to the operator of any vehicle which is disabled while on the highway in such a manner or to such extent that it is impossible to avoid stopping or *temporarily* leaving such vehicle in such position." (Italics supplied.)

We construe the word *"temporarily"* of such subsection to only include such lapse of time as will permit the operator to

take reasonable steps to remove the vehicle from its position of danger on the highway. Mrs. Grund made no effort at all to summon help to remove the stalled automobile. Her act of going home and there awaiting the uncertain time of arrival of her son, Roland, was more than a temporary leaving of the stalled vehicle and constituted negligence as a matter of law.

We determine that the combined negligence of Ulrich and Marie Grund was at least equal to, or exceeded, the negligence of Roland Grund, and that the trial court properly directed a verdict in favor of the defendants.

*By the Court.*—Judgment affirmed.