FRANK D. BURNS, Administrator of the Estate of FRANK E. BURNS, Jr., Plaintiff and Appellant, v. B. A. FISHER, d/b/a Hi-Ball Contractors and H. A. EMBREY, Defendants and Respondents.

No. 9469.
Submitted February 25, 1957. Decided June 20, 1957.
As Amended July 31, 1957.
313 Pac. (2d) 1044.

27

Mr. G. J. Jeffries, Roundup, Mr. Ralph J. Anderson, Mr. Myles J. Thomas, Helena, for appellant.

Messrs. Coleman, Jameson & Lamey, Billings, Messrs. O'Neil & Cavanaugh, Glendive, for respondent.

Mr. Thomas, Mr. Anderson and Mr. Arthur F. Lamey argued orally.

MR. JUSTICE ANGSTMAN:

This action was brought to recover damages for the alleged wrongful death of Frank E. Burns, Jr. He was killed while sitting in a Ford truck which had stalled on the highway near Glendive when it ran out of gasoline. While Burns was thus sitting in the cab of the stalled truck another truck weighing about 30,000 pounds driven by defendant H. A. Embrey, and owned by the defendant Fisher crashed into the Ford truck and caused the latter to be overturned, resulting in the death of Burns.

At the conclusion of plaintiff's evidence the court sustained

28

a motion for nonsuit and entered judgment in favor of the defendants. From this judgment plaintiff has appealed.

The motion for nonsuit was upon four grounds, namely: (1) that the complaint fails to state facts sufficient to constitute a cause of action; (2) the evidence shows that the injury and death were proximately contributed to or caused by the negligence of the deceased; (3) for failure to prove by competent, substantial evidence the material allegations of the complaint; and (4) failure of proof to show that there was any appreciable length of time between the wrong and the death, it being contended that the evidence shows that the wrong and the death were coincident in point of time, and hence that the plaintiff has failed to prove that the decedent survived the blow by an appreciable length of time.

The record discloses that the accident happened on May 15, 1952, at about one-thirty or two o'clock in the morning; it occurred on the Circle-Glendive highway at a point about two miles west of Glendive. Burns was sitting in the cab of a one and one-half ton Ford truck facing east and on the south half of the highway. He put out no flares. The Ford truck had on the back thereof a tool shed made of aluminum sheeting over a frame. The tool shed was approximately 8 feet wide, 9 feet high and 12 feet long. The truck had two lights on the rear which when lighted would be visible to anyone approaching from the west for a distance of more than 2,000 feet. The defendant Embrey, as a servant and agent of the defendant Fisher whose truck he was driving, approached the highway at a point where the Burns truck was situated and was traveling at about 35 or 40 miles per hour. The road was dry, and there was room on the north side of the highway for him to pass the truck and trailer. His lights were dimmed or on low beam and Embrey thought they would not shine 150 feet when traveling empty as he was at the time. The record shows that as the Fisher truck approached the Burns truck two cars traveling in a westerly direction passed the Ford truck. Neither of them dimmed their lights and he said the lights "kind of" blinded him, just for

the instant. He did not see the parked truck in which Burns was sitting.

The two approaching cars were about 150 or 200 feet apart and the first one was west of the stalled Ford when its lights blinded Embrey, and the second one was east of the stalled Ford when its lights blinded him. After the defendant's truck struck the Ford truck it passed some 180 or more feet before coming to a stop; the truck operated by Embrey had a system of air-controlled brakes which were put out of commission by the impact and hence there was no means of stopping the truck mechanically after the impact.

After the cars came to a stop defendant Embrey got out, disconnected some wires and then a minute or two later spoke to Burns but received no answer.

A Mr. Evans, traveling easterly, came over the road a few minutes before the defendant Embrey did and saw the Burns truck parked on the highway and almost hit it. He stopped to talk to Burns and offered to assist him. Upon asking his trouble Burns replied that he was just out of gas and that another boy would be along from the Wagon Wheel (shown to be a place of business in Glendive) to give him some help. Evans said he was pretty sure that he reminded Burns that he did not have any flares out, and as Evans started to drive away Burns got back into the truck. He nearly ran into Burns' truck because he thought it was moving, and did not discover it was parked until he was about 50 feet from it. He said the tool house completely obstructed the back of the cab.

If any one of the grounds of the motion for nonsuit were ██ well taken then the ruling thereon and the judgment must be sustained. The rule, however, is well established that in reviewing the court's action in sustaining a motion for nonsuit we must deem every fact true which the evidence tends to prove and interpret the evidence in the light most favorable to the plaintiff. Blinn v. Hatton, 112 Mont. 219, 114 Pac. (2d) 518; McCulloch v. Horton, 102 Mont. 135, 56 Pac. (2d) 1344. Yet, if the evidence is such that a recovery cannot be had on

any reasonable view, it is proper for the court to take the case from the jury. Wilcox v. Smith, 103 Mont. 182, 62 Pac. (2d) 237; Lesage v. Largey Lumber Co., 90 Mont. 372, 43 Pac. (2d) 896.

One ground of the motion for nonsuit was that plaintiff failed to show that there was an appreciable length of time between the wrong and the death.

The complaint seeks recovery for the pain and suffering of the deceased, alleged to have been endured for an appreciable length of time before his death. It alleges that decedent was 19 years of age at the time of his death and had a life expectancy of 43.53 years, was earning approximately $3,000 per year, and contains an allegation that his estate has been damaged in the sum of $130,590, for which judgment was sought.

The complaint seeks recovery for the alleged cause of action existing in favor of decedent and which he might have maintained had death not resulted.

Plaintiff's counsel recognized that it was incumbent upon plaintiff to prove that death was not instantaneous in order to recover within the rule of Melzner v. Northern Pac. Ry., 46 Mont. 162, 127 Pac.146; Dillon v. Great Northern Ry., 38 Mont. 485, 100 Pac. 960, and other cases. The only evidence bearing upon the question whether decedent lived any appreciable length of time, and which plaintiff contends shows that death was not instantaneous, is the following:

Lawrence Silvernale, the mortician, examined the body after it was removed to the mortuary in Glendive. He said: "The right eye was solid black and slightly cut above that and there was a slight frothy expurge at the mouth," which he said looked like soapsuds. He further testified: "Q. Was it in the mouth? A. Or lips when we got the body to the mortuary." He was asked: "Q. Can a lung purge after death? A. In some cases, yes."

There was no autopsy performed and no determination made of internal injuries.

Dr. Gallivan was asked a hypothetical question designed to

elicit his opinion as to whether Burns lived an appreciable time after the impact. The question contained a supposition, "that the undertaker in his examination found a swelling of the right eye." The record however does not support the supposition that there was a swelling of the eye. All that the undertaker found was that the eye was "solid black."

Dr. Gallivan was asked: "Q. Going back to the question, in the absence of knowledge, either internal abdominal, or other internal organ damage, you would not be in a position to testify when death occurred in this man, would you? A. The moment he died? I don't think you could put a time on it." He further testified: "Dr. Gallivan, let me ask you if one is killed instantaneously as a result of a blow or trauma, will a swelling occur of the body subsequent to the death of the recipient of the blow or trauma? A. No, a swelling will not occur because if a man is dead there is no heartbeat or action to cause a swelling."

This was and is the theory of plaintiff in support of his contention that death was not instantaneous. But as above noted the conclusion is based upon a premise not supported by the record that the eye was swollen.

Dr. Gallivan further testified that it would take a half a minute to a minute after a blow to, or in the vicinity of, the eye before a swelling would take place. As above noted there was no evidence of a swelling and hence there was no evidence upon which to base a conclusion that Burns lived an appreciable length of time after the impact. Hypothetical questions must be based upon evidence before the court at the time they are asked. State v. Riggs, 56 Mont. 393, 185 Pac. 165.

Careful consideration of all the evidence in the case leads us to the conclusion that the court was right in taking the case from the jury for another reason. There was no evidence of a want of care on the part of the defendant truck driver. The only reasonable conclusion to be drawn from all the circumstances is that the injury and death of the decedent was due to and proximately caused as a matter of law by his own negligence. Admittedly he did not put out any flares. He

was an experienced truck driver and was cautioned about the danger in not doing so. A few minutes before the unfortunate accident he was out of the truck and in a place of safety and voluntarily chose to re-enter it and remain in the cab of the truck at a place which was known or ought to have been known to be dangerous. The view from the seat of the truck to the rear was obstructed by the tool house and the decedent should have known that it was entirely possible that approaching vehicles from the rear, no matter how careful the drivers may have been, would be unable to see his truck, until it was too late to avoid running into it, particularly when lights of vehicles going in the opposite direction interfered with the vision.

Here the decedent was guilty of negligence as a matter of law in disobeying the requirements of R.C.M. 1947, section 31-108, reading:

"For the purpose of this act, the following acts committed relative to the use of the highways and the operation of motor vehicles in the State of Montana shall constitute a crime punishable by law as hereinafter provided:

\* \* \* \* \* \*

"15. Allowing parked, disabled, or stalled motor truck, bus, trailer, or house trailer on the highway without having flares or lanterns during the night time, and red flags in the day time, placed at a sufficient distance, depending on conditions, front and rear, to allow oncoming traffic an opportunity to stop; and not removing such motor vehicle, trailer, or house trailer from the highway as quickly as possible."

It will be noted that this section requires placing of flares when a truck or vehicle is parked upon the traveled portion of the highway "at a sufficient distance depending on conditions, front and rear, to allow oncoming traffic an opportunity to stop." Likewise decedent violated the latter portion of subdivision 15 in not removing the truck from the highway when Evans offered to assist him.

A case very similar to this, on the facts, is that of Martin v. Sweeney, 207 Md. 543, 114 A. (2d) 825, 827, where plain-

tiff remained in a car which was allowed to remain on the traveled portion of a highway and was struck by an oncoming vehicle. Plaintiff was held guilty of contributory negligence as a matter of law. There the court said:

"It is axiomatic that the law places upon one the duty of exercising reasonable care for his own protection under any and all circumstances and that this requirement of the law is little more than is naturally practiced under the instinct of self-preservation What an ordinarily prudent and careful person would do under a given set of circumstances is usually controlled by the instinctive urge to protect himself from harm. Yockel v. Gerstadt, 154 Md. 188, 194, 140 A. 40. This principle has been applied where one leaves a place of safety to venture into a place or posture of danger, and is harmed; in such cases, the venturesome one often has been held to be guilty of contributory negligence as a matter of law. Yockel v. Gerstadt, supra; Billmeyer v. State to Use of Whiteman, 192 Md. 419, 64 A. (2d) 755; Schaub v. Community Cab, Inc., 198 Md. 216, 81 A. (2d) 597; Domeski v. Atlantic Refining Co., 202 Md. 562, 97 A. (2d) 313. Conversely, where one who remains in a place of danger with time and the physical ability to leave and is harmed, the courts have often held such failure to act to be contributory negligence as a matter of law. Restatement Torts Section 466."

Many cases are there cited in support of the statement. See, also, to the same effect Western Casualty & Surety Co. v. Dairyland, etc., Co., 273 Wis. 349, 77 N.W. (2d) 599.

Plaintiff contends that in spite of the negligence of the ▮ [9] cedent the defendants should be held liable under the doctrine of the last clear chance. Plaintiff relies largely upon the cases of Pollard v. Oregon Short Line R. Co., 92 Mont. 119, 11 Pac. (2d) 271; Armstrong v. Butte, A. & P. Ry. Co., 110 Mont. 133, 99 Pac. (2d) 223, and Sorrells v. Ryan, 129 Mont. 29, 281 Pac. (2d) 1028. The difficulty with that contention is that there is no showing that the defendant truck driver had the last clear chance to avoid the death of decedent.

Before the Pollard case was decided there was no liability

under the last clear chance doctrine without allegation and proof of actual discovery of the person injured and appreciation of his perilous position. Melzner v. Northern Pacific Ry. Co., 46 Mont. 162, 127 Pac. 146; Haddox v. Northern Pacific Ry. Co., 46 Mont. 185, 127 Pac. 152; Dahmer v. Northern Pacific Ry. Co., 48 Mont. 152, 136 Pac. 1059, 142 Pac. 209; McIntyre v. Northern Pacific Ry. Co., 56 Mont. 43, 180 Pac. 971; Stricklin v. Chicago, Milwaukee & St. Paul Ry. Co., 59 Mont. 367, 197 Pac. 839.

In the Pollard case the rule was extended so as to predicate liability when defendant by using reasonable care ought to have discovered the plaintiff in a perilous position when the injury or death occurs at a crossing where there is a duty to keep a lookout.

The rule was adhered to in another crossing case, that of Armstrong v. Butte, A. & P. R. Co., 110 Mont. 133, 99 Pac. (2d) 223, and by a divided court in Sorrells v. Ryan, 129 Mont. 29, 281 Pac. (2d) 1028, where the injury arose on a city street.

If we concede that the doctrine applies on the oiled country highways without actually seeing the vehicle collided with, the doctrine cannot rule this case under the circumstances here shown.

Here the record shows that defendant driver could not see plaintiff or the truck in which he was sitting because of the lights from oncoming vehicles. This evidence stands uncontradicted. It was offered by plaintiff as a part of plaintiff's case.

We have repeatedly held that uncontradicted credible evidence may not be disregarded. Giebler v. Giebler, 69 Mont. 347, 222 Pac. 436; Nichols v. New York Life Ins. Co., 88 Mont. 132, 292 Pac. 263, and cases there cited.

Is the evidence of defendants' inability to discover plaintiff in his perilous position credible, and if not what part of it may be rejected by the court or jury as unsatisfactory or incredible? Certainly it is not unreasonable or incredible to believe that there were oncoming cars approaching defendant at the point

of the accident. That is but the reasonable and everyday story of "man on the go" in the generally accepted mode of travel.

Since it was nighttime it is not incredible to accept the testimony that the oncoming cars had their lights on. If the explanation that the lights were not dimmed be rejected as incredible that would not solve the problem before us. We would still be confronted with the question whether defendant driver in the exercise of reasonable care could have discovered the truck or Burns in time to have avoided the accident.

If we assume that liability arose, if discovery of the stalled truck could have been made in time to have avoided striking it, and that it was unnecessary to have seen Burns sitting in the truck (though the contrary was assumed in the Pollard case, supra), the evidence before us is all to the effect that such discovery could not have been made in time to avoid the collision.

One traveler who passed the Ford truck when there were no oncoming cars and no lights to bother his vision almost struck the truck because he could not see that it was standing still until so close to it that he almost struck it. At that time the lights were burning on the Burns car. Whether they were burning when defendant Embrey approached, the record does not reveal, but if we assumed they were lit the result would be the same. With the vision blinded by the lights of the oncoming cars, whether dimmed or not, there is in this record no evidence upon which a jury could find that defendant driver should or could have discovered the parked truck in time to avoid striking it.

Plaintiff contends that the absence of flares was not a proximate cause of Burns' death since he contends the taillights of the Ford truck were lit, and if defendant driver could not see them he could not see the flares. This contention overlooks the requirement of the statute that the flares be placed at a sufficient distance to enable vehicles to stop before colliding with a parked vehicle. This the taillights do not necessarily accomplish, even when lit, particularly when there is nothing to indicate that the vehicle is parked and not moving.

In order to find for plaintiff on this record the jury would

have to find that Embrey owed a greater duty to Burns than he did to himself, for it was just as dangerous to Embrey's safety as to Burns' for the trucks to collide.

Plaintiff has called our attention to a number of cases which it is contended have ruled under similar circumstances that the case is one that should go to the jury. The case of Yates v. Morotti, 120 Cal. App. 710, 8 Pac. (2d) 519, 521, has been cited by plaintiff as being one wherein the facts are similar to those here, and where it was held that it was for the jury to determine who was at fault.

The facts in that case are very different from those here. It is true that plaintiff parked his car on the wrong side of the street, but that fact did not contribute to the injuries. Had the car been turned around and faced in the opposite direction it would have been properly parked in the identical place. The court there said:

"It seems evident that even if the plaintiff's car had been headed the other way and that it was parked with the right side of her car against the westerly curbing, the defendants' car would have crashed into it just the same."

Likewise in that case it was pointed out that defendant driver of the car appeared to be intoxicated and zigzagged from one side of the street to the other. He was as the court said, "making a clean sweep of the entire street." He first hit another car on one side of the street and then crashed into plaintiff's car on the opposite side of the street. He was traveling on California Street in Stockton at forty-five miles per hour.

Another case relied on by plaintiff is that of Devlin v. Spokane United Rys., 183 Wash. 342, 48 Pac. (2d) 252, 254, affirmed in 53 Pac. (2d) 1198. That case too is entirely different from this. There the driver of the bus which collided with plaintiff's car actually saw plaintiff's car before striking it. The court recited the facts as follows:

"In the instant case, the motorman, or bus driver, placed the burden upon others rightfully in the street of protecting themselves against him as if his car had the right of way to the

whole street. He saw them, but they didn't see him. That being true, and it being a street upon which the traffic was probably slight at that time of the morning, and there is no evidence of congested traffic, he could easily have stopped, when operating his bus at what he said was his speed of eighteen or twenty miles an hour, as he testified, in 24 feet. The automobile of respondents being stalled and stopped, it was impossible for them to move it to avoid the approaching bus.''

Folken v. Petersen, 140 Neb. 800, 1 N.W. (2d) 916, 919, is relied on by plaintiff. The facts are wholly different from those here. Defendant was following plaintiff on the highway. Plaintiff blinked his lights, applied the brakes and came slowly to a stop. He got a flashlight and stepped on the running board to find out the cause of a thumping noise. Just as he did so his truck was hit by defendant's truck. Defendant saw plaintiff's truck and was watching it as he was driving behind it. The court in that case said:

''This evidence, coupled with defendant's testimony that at 30 miles an hour his truck could be stopped within 16 to 25 feet and the testimony of his driver that he was driving 20 to 25 miles an hour and was 30 to 40 feet behind plaintiff's truck, plus the fact of the unobstructed left half of the highway, constituted a basis for a finding that the defendant's driver had an opportunity to avoid the collision.

'' 'The doctrine of last clear chance applies in those cases where there is negligence of the defendant subsequent to the negligence of the plaintiff and the defendant's negligence is the proximate cause of the injury'. Parsons v. Berry, 130 Neb. 264, 264 N.W. 742.''

The case of Rector v. Allied Van Lines, La. App., 198 So. 516, is relied on by plaintiff. That case involved facts quite similar to those here except that in that case there were no blinding lights affecting the vision of the oncoming truck driver as here, and what the court said on that subject was dictum. The foggy weather conditions are what affected the vision in that case, and the court was actuated by the circumstances that

38

one driver passed the parked car a few minutes earlier when the weather conditions were similar without a collision, but here there were no blinding lights of oncoming vehicles affecting the vision of Evans who passed the parked truck without striking it. Likewise there was evidence in that case, although conflicting, that the front and rear lights on the parked car were left burning. Also plaintiffs, unlike the facts here, had pushed their car at least partially off the oiled portion of the highway.

In Thiaville v. Toups, La. App. 25 So. (2d) 361, the facts differ from those here since plaintiff's testimony, which must be accepted by the court in determining whether a case is made for the jury, showed the plaintiff's vehicle was parked on the shoulder of the road and not in the lane of traffic.

State of Maryland, for Use of Joynes v. Coard, 175 Va. 571, 9 S.E. (2d) 454, was one where the accident occurred on an arterial highway in the built up section of a city where there is a duty to keep a sharp lookout.

In Anderson v. Thompson, 137 Kan. 754, 22 Pac. (2d) 438, 440, the jury found for defendant. Its verdict was upheld, the court saying:

"Contributory negligence on the part of Floyd Anderson prevents recovery by his father, and for present purposes, the action may be regarded as one by Floyd Anderson. Manifestly one chargeable with the duties and responsibilities of operator of a motor vehicle on a highway may not, in his own action against another motorist, relieve himself of the consequences of contributory negligence on the ground the defendant ought to have anticipated the plaintiff would be guilty of negligence contributing to his injury."

All of the cases relied on by plaintiff differ from this in some important particulars.

Plaintiff contends here that defendant under R.C.M. 1947, section 32-1132, should have had his truck equipped with two sets of independently operating brakes. This is not one of the grounds of negligence relied on in the complaint. There is nothing in this record to indicate that the brakes or absence of

brakes had anything to do with the death of Burns. From all that appears in the record his death may have occurred exactly as it did even though the truck were equipped with three sets of independently operating brakes.

Since there is no evidence which would support a verdict in favor of plaintiff, it was proper for the court to sustain the motion for nonsuit.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES, concur.

MR. JUSTICES ADAIR and BOTTOMLY, (dissenting).

We dissent. Under the evidence in the record before us the alleged negligence of the defendant and the alleged contributory negligence of the decedent are questions properly and lawfully for the determination of the jury and not for the determination of the judge presiding at the trial. In denying the jury the opportunity of considering and deciding these questions, the trial judge, in our opinion, committed reversible error and to correct this error the judgment should be set aside and a new trial granted.