[Civil No. 4273. Filed April 14, 1941.]

[112 Pac. (2d) 584.]

JESSIE DIXON, Special Administratrix of the Estate of Henry C. Dixon, Deceased, Appellant, v. ALABAM FREIGHT COMPANY, a Corporation, and VERNON TIMBERLAKE, Appellees.

Mr. V. L. Hash, for Appellant.

Messrs. Struckmeyer & Flynn, for Appellees.

LOCKWOOD, C. J.—Jessie Dixon, hereinafter called plaintiff, brought an action as special administratrix of the estate of Henry C. Dixon, deceased, against Alabam Freight Company, a corporation, and Vernon Timberlake, hereinafter called defendants. The action was based on the alleged negligence of defendants, whereby plaintiff's decedent was killed in an automobile collision near Tempe. The case was tried to the court with a jury, and at the end of plaintiff's case the court granted a motion for an instructed verdict in favor of defendants, whereupon this appeal was taken.

The accident on which the suit is based occurred about eight o'clock p. m. on August 31, 1938, on the Phoenix-Mesa highway at a curve east of the city limits of Tempe. The complaint alleged six distinct acts of negligence on the part of defendants in the operation of a truck which was involved in the accident. These acts of negligence are as follows: (a) That defendants drove the truck to the left of the center line of the highway at the time of the accident, (b) that they permitted their truck to travel over and upon the right of way of deceased, whereby the collision occurred, (c) that the truck at the time was driven at an unlawful rate of speed, (d) that it was driven at a speed greater than was reasonable and prudent

under the circumstances, (e) that the speed was greater than would permit the driver to exercise proper control over the truck, and (f) that the truck was not operated as close to the right-hand side of the highway as was practicable under the conditions then existing.

The actual facts shown by plaintiff's evidence to exist at the time of the collision are in little dispute, and may be stated for the purpose of this appeal as follows: Highway number 80, between Mesa and Tempe, is a through and much traveled highway. The right of way is approximately one hundred feet wide, and at the time of the accident the surfaced and usually traveled portion of the highway at the place of the accident was about sixty-four feet in width. The state highway department had caused a white line to be marked upon the traveled portion of the highway practically in the center thereof for the purpose of designating to drivers where such center was. At some time prior to the day of the accident the highway department commenced repairing and widening said highway and in the course of such repairs had torn up a considerable portion of the south side thereof. At the time of the accident there was approximately eleven feet of the traveled portion of the highway south of the white line which was in a condition to be used, the line between the travelable and untravelable portion being marked by barriers and burning flares at the time of the accident. It thus appears that north of the white line in question there was a clear and paved space some thirty-two feet in width, while to the south thereof was a space of approximately only eleven feet. Defendant Timberlake at the time of the accident was driving a truck some eight feet wide and approximately forty feet long, of the type commonly described as a semi-trailer, in an easterly direction towards Mesa. The deceased, Henry C. Dixon, was returning

from the southern part of the state, where he had been working as a mechanic, to visit with his family. At about eight o'clock p. m. the pick-up truck driven by deceased in a westerly direction and the truck driven by defendant Timberlake collided, and as a result of the collision Dixon was killed. At the time of the collision defendants' truck was proceeding at a rate of from fifteen to twenty miles per hour, and the left-hand wheels thereof were from two to three feet to the north of the white line above referred to. This is substantially the situation as shown by the evidence.

■ If, from this evidence, a reasonable man might draw the conclusion that defendant Timberlake was guilty of either statutory or common law negligence in the operation of the truck at the time of the accident, the court erred in withdrawing the case from the consideration of the jury. If no reasonable man could draw such a conclusion, the court properly instructed a verdict for defendants.

■ It will readily be seen that the allegations of an unlawful or unreasonable rate of speed were not sustained by the evidence, and, indeed, this is practically admitted by plaintiff. She relies solely upon the fact that the wheels of the truck were some two or three feet to the north of the white line above referred to as being either statutory or common law negligence, and urges that the case should have been submitted to the jury on these issues.

■ The place upon the highway in which a motor vehicle must be driven is regulated by sections 66–106 and 66–107, Arizona Code 1939, which read, so far as material, as follows:

"*Drive on right side of highway.*—Upon all highways of sufficient width the driver of a vehicle shall drive the same upon the right half of the highway and shall drive a slow moving vehicle as closely as pos-

sible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway, and except when overtaking and passing another vehicle. . . . "

*"Meeting or overtaking vehicles.*—Drivers of vehicles proceeding in the opposite directions shall pass each other to the right, each giving the other at least one-half of the main traveled portion of the roadway as nearly as possible. . . . "

It will be seen that generally speaking drivers of vehicles shall "drive the same upon the right half of the highway and shall drive a slow moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway," while, when two vehicles are passing each other upon a highway, and going in opposite directions, the drivers shall each give the other one-half of the "main traveled portion of the roadway as nearly as possible." Construing these two sections together, we think the "right half of the highway" always means the right half of the main traveled portion of the highway *as it exists at the time.* This is the only reasonable construction which can be given for if it refers to the condition existing at any other time it might well be that in the course of repairs or temporary construction upon the highway, one entire half of such highway would be entirely blocked from travel, so that it would be illegal for traffic moving in one direction to travel at all. On the other hand, if we construe the language to mean the right half of that portion of the highway available for traffic, there is a simple, easily understandable, and at all times workable, rule for motorists to follow. The white line which the highway department very properly places on the highway is for the guidance of motorists to assist them in keeping on the right half of the highway as it exists at the time

the line is placed there, but it is not necessarily, as a matter of law, always the center of the highway.

 The main traveled and available highway at the time and place of the accident was forty-three feet wide, and it was the center of that forty-three feet which marked the "right half" on which motorists passing in opposite directions were required to remain. The left side of defendants' truck was at the most only fourteen feet from the edge of the south half of the highway, leaving a space between such left side and the legal center of the highway, as it existed at the time, of at least seven feet within their right of way. The physical facts show that it was the deceased who was on the wrong half of the highway, as a matter of law, and not defendant Timberlake. Nor can it be said the latter was guilty of statutory negligence by not driving as close to the right edge of the highway as was possible. This provision of the statute is evidently not meant for the protection of vehicles coming in an opposite direction, for they have no right to be on that half of the road at all, but rather for vehicles lawfully traveling on the same half of the road which desire to pass in the same direction. The plea of statutory negligence cannot be sustained.

The next question is whether there was any common law negligence in the position of the truck at the time of the accident. The truck was, at the most, occupying fourteen feet of the highway, while the pick-up was necessarily using twenty-nine feet, or at least twice as much of the highway as the truck. Certainly we think no reasonable man could say that the truck was occupying an unreasonable portion of the highway, and since the only possible negligence was its position upon the highway, and not the manner in which it was driven, we think the trial judge correctly held that there was no evidence of either statutory or common law negligence on the part of the driver of

the truck. Under such circumstances it was the duty of the trial court to instruct the jury to return a verdict in favor of defendants.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.