FRED E. JOHNSON, APPELLANT, v. ARNOLD GRIEPENSTROH, APPELLEE.

33 N. W. 2d 549

Filed July 20, 1948. No. 32354.

*Lloyd E. Peterson* and *Betty Jean Peterson,* for appellant.

*Rosewater, Mecham, Stoehr & Mecham* and *John M. Dierks,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

Plaintiff, a pedestrian, was struck by defendant's car at an intersection, and brought this action to recover damages for personal injuries allegedly resulting therefrom. Upon trial to a jury, defendant was awarded a verdict and judgment. Plaintiff's motion for new trial was overruled, and he appealed. Assignments of error were substantially that the trial court erred: (1) In giving instruction No. 3 on its own motion, and in failing to instruct the jury that plaintiff's alleged contributory negligence was an affirmative defense to be proved by defendant; (2) in giving instructions Nos. 13 and 14, and each of them respectively, on its own motion; (3) in failing to give the statutory definition of right-of-way accorded a pedestrian under section 39-751, R. S. 1943; and (4) in excluding certain rebuttal evidence offered by plaintiff. We sustain the foregoing first, second, and fourth assignments. Other assignments appear in plaintiff's brief, but, in view of our conclusions, they will not require separate discussion.

Concededly, Central Avenue, a paved street approximately 50 feet wide, runs east and west in Nebraska City. It is a busy main thoroughfare, intersected by Eighth Street, a paved street approximately 44 feet wide, running north and south. At the time of the accident, there was a metal stop button in the middle of Eighth Street, north of but adjacent to its intersection with Central Avenue, into which the movement of traffic was

not being regulated by traffic officers or mechanical signal-changing devices.

Competent evidence introduced by plaintiff in support of the material allegations of his petition were substantially as follows: That on March 1, 1945, between 4:30 and 5 p. m., plaintiff, standing on the sidewalk at the edge of the curb, on the northwest corner of Central Avenue's intersection with Eighth Street, looked both ways, west and east, and then started to walk south in the sidewalk space. He had taken three or four steps when defendant, driving his car from the north on Eighth Street at 10 to 15 miles per hour or more, failed to stop at the stop button, came on into the intersection, turned west on Central Avenue, without sounding his horn or giving any other signal, and, although plaintiff tried to step back, defendant's car struck him on his left side, leg, and hip, with the front of the right front fender. Plaintiff was thrown up on the car between the fender and the hood, and defendant's car proceeded west until it stopped at a point where the front end was about a car-length west of the intersection, or where the front half of it was west of the sidewalk space and the back half was still therein, where plaintiff rolled off the car into the street.

There was evidence adduced in plaintiff's behalf that defendant got out of the car to give assistance, and told plaintiff "I didn't see you until I hit you. The sun was in my eyes." Defendant admitted that the sun flashed on his windshield and that he was blinded for a split second, seeing plaintiff afterward. An ambulance took plaintiff to a hospital, and it was discovered, without dispute, that he had a fractured left hip, and he claimed serious and permanent injuries and damages.

On the other hand, competent evidence introduced by defendant in support of the material allegations of his answer, was substantially as follows: That defendant stopped at the stop button on Eighth Street until several cars passed and its intersection with Central Avenue had

cleared of traffic. Thereafter, he proceeded to make a right-hand turn west, in low gear, at three or four miles an hour, when he saw plaintiff just one or two steps before the collision. Plaintiff was then on the left, or south, side of defendant's car, not within the area of the cross-walk but at the west edge thereof, jaywalking to the northwest. At that time, defendant proceeded to stop, but plaintiff kept on walking, and walked right into the left front fender of defendant's car, after which plaintiff fell or rolled in front of the left side of the car and there lay in the street on his left side, head to north, feet south.

Defendant assisted plaintiff over to the north side of the car, out of the lane of traffic, where he leaned upon the right fender until an ambulance arrived. At the time of the accident, plaintiff purportedly said to defendant, in the presence of defendant's father, that: "he didn't see me, and he didn't know what had hit him." "I didn't see no car coming * * * You made an awful quick stop." In the hospital three or four days later, plaintiff allegedly made similar statements.

Plaintiff, in his original petition, alleged that he was lawfully walking from the "southwest corner to the northwest corner" which was amended before trial to read "from the northwest corner to the southwest corner." As held in Arman v. Structiform Engineering Co., 147 Neb. 658, 24 N. W. 2d 723: "When a litigant files an amended pleading, the averments of which are inconsistent with the averments of his original pleading, the original is evidence which may be offered in the case as an admission of the litigant contrary to his claim in the amended pleading." It must be remembered, however, as discussed and held in the opinion, that such original pleading is not conclusive evidence but competent, as any other admission of a party against interest, and should be given such weight as the trier of fact deems it entitled in the light of the pleader's explanation, if

any, of the circumstances under which the admissions were made.

In the foregoing situation, we conclude that the issues of negligence pleaded by plaintiff, and contributory negligence affirmatively pleaded by defendant, were questions for determination by the jury under appropriate instructions of the trial court.

At the outset, we will discuss plaintiff's contention that the trial court erred in failing to give the statutory definition of right-of-way accorded a pedestrian under section 39-751, R. S. 1943. That contention of itself has no merit for the reason that plaintiff's requested instruction No. 1, although marked "Refused" was actually given verbatim by the trial court in instruction No. 7. It correctly and exactly quoted the applicable provisions of the statute relating to the right-of-way of pedestrians crossing a highway within a business or residence district and vehicles traveling thereon.

In that connection, the term "right-of-way" used in the statute and in the instruction required no definition as argued by defendant, since they are words of common use, generally understood by everyone of ordinary intelligence.

As stated in Johnson v. Batteen, 144 Neb. 384, 13 N. W. 2d 625: "Jurors are accepted because they are men and women of common sense and have a common understanding of words ordinarily used in our language." Also, as held in Horn v. Goldberg, 137 Neb. 813, 291 N. W. 493: "Where an instruction correctly states the law in language commonly used and generally understood, it is not necessary that the trial court, on its own motion, define the language used. A party desiring a definition of the terms so used should offer such an instruction. In the absence of a specific request, the failure of the trial court to define the terms used in the requested instruction is not error."

With few immaterial exceptions, the evidence adduced herein was very similar to that in Halliday v. Raymond,

147 Neb. 179, 22 N. W. 2d 614, and was generally controlled by the propositions of law therein set forth.

If the accident happened as claimed by plaintiff, then defendant, under the situation, would be guilty of negligence, which was the proximate cause of the accident. Under plaintiff's theory and evidence, he had the right-of-way under the statute, and "It is the duty of the driver of an automobile to exercise reasonable care in its operation, and where pedestrians are numerous and traffic is congested, the degree of care required must be commensurate with the danger reasonably to be anticipated." Christoffersen v. Weir, 110 Neb. 390, 193 N. W. 922. See, also, Halliday v. Raymond, *supra;* Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499.

It was plaintiff's duty, as an ordinarily cautious and prudent person, to look to the right and left in crossing an intersection, to observe cars coming from either direction. However, he had the right to assume that vehicles approaching from the rear would exercise ordinary care in keeping a lookout for him, and there was no duty imposed upon him to maintain a lookout to the rear to avoid a charge of negligence. On the other hand, if plaintiff was proceeding from the south, as contended by defendant, and saw, or by the exercise of reasonable care should have seen, defendant's car, and then suddenly either walked into its path or into it, he would be guilty of negligence as a matter of law. The evidence being in conflict, however, the questions of negligence and contributory negligence were for the jury. Halliday v. Raymond, *supra,* and cases cited therein.

Instruction No. 13, about which plaintiff complained, left out the qualification that plaintiff, if proceeding from the north on the cross-walk, had a right to assume that vehicles approaching from the rear would exercise ordinary care in keeping a lookout for him, and that under such circumstances he was under no duty to maintain a lookout to the rear to avoid a charge of negligence. Viewed in that light, instruction No. 13 presented only

defendant's theory, and was thus prejudicially erroneous.

Plaintiff complained of instruction No. 3, upon the ground that it wrongfully placed upon him the burden of proving that he was not guilty of contributory negligence, and that the trial court failed to instruct the jury that the burden of establishing contributory negligence was upon defendant as an affirmative defense. We conclude that instruction No. 3 did have the effect of erroneously placing the burden of proof entirely upon plaintiff. The other instructions given failed in any manner to instruct the jury in conformity with the rule that: "If contributory negligence is relied upon by defendant as an affirmative defense, the burden is upon him to prove it by a preponderance of the evidence pertinent to that issue contained in the whole record, except in so far as the same may appear in evidence adduced for the plaintiff." Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175. See, also, Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W. 2d 412.

In that regard, Thomas Kilpatrick & Co. v. London Guarantee & Accident Co., 121 Neb. 354, 237 N. W. 162, relied upon by defendant, is not controlling here, because clearly distinguishable. The instructions therein, taken as a whole, properly placed the burden of proof upon the party who was required to assume it. Here contributory negligence was an affirmative defense, pleaded by defendant in his answer. It was thus a material issue, presented by the pleadings and evidence, and it was the duty of the trial court to submit to and properly instruct the jury upon that issue whether requested to do so or not. In re Estate of Inda, 146 Neb. 179, 19 N. W. 2d 37; In re Estate of Keup, 145 Neb. 729, 18 N. W. 2d 63. The failure to do so was prejudicial error. Carlson v. Roberts, 133 Neb. 166, 274 N. W. 473; Kirchman v. Kratky, 51 Neb. 191, 70 N. W. 916; McIninch v. Evans, 90 Neb. 243, 133 N. W. 187.

Plaintiff argued that instruction No. 14, giving defendant the benefit of the doctrine of emergency pleaded by

him, was prejudicially erroneous. We sustain that contention.

In the realm of negligence cases, an emergency has become the basis for a rule of law which is dependent for application upon two factual elements. This court has held that: "Where one driving an automobile is suddenly confronted by an emergency, requiring instant decision, he is not necessarily guilty of negligence in pursuing a course which mature reflection or deliberate judgment might prove to be wrong." Belik v. Warsocki, 126 Neb. 560, 253 N. W. 689.

However, that rule cannot be successfully invoked by either party in a negligence case unless there is competent evidence to support a conclusion that a sudden emergency actually existed, and then it cannot be successfully invoked by one who has brought that emergency upon himself by his own acts or has not used due care to avoid it. Hughes v. Omaha & C. B. Street Ry. Co., 143 Neb. 47, 8 N. W. 2d 509.

An examination of instruction No. 14 discloses that it gave defendant the benefit of the doctrine of emergency, not only by factually assuming that an emergency existed, but also by omitting the factual qualification that the doctrine could not be invoked by defendant if it were found that he had brought the emergency upon himself by his own acts or had not used due care to avoid it. Both elements were factual questions for determination by the jury, and the failure to so submit them was prejudicially erroneous.

Finally, plaintiff argued that the trial court erred in the exclusion of certain rebuttal evidence. We sustain that contention.

In that connection, an alleged eyewitness testified in detail and at length in support of defendant's contentions. There is other evidence from which it could be reasonably inferred that he was not an eyewitness, but got his first information thereof from a newspaper. Concededly, he had previously become involved with

plaintiff and his wife over the disappearance of a tire, which they claimed he had taken, but which he denied. The matter was reported to the sheriff, who called up the witness, and he paid for the tire, believing, as he testified, that, having used plaintiff's car at the time of its disappearance, he was liable therefor.

Upon cross-examination, the witness was asked: "Now, at that time and place, when you paid for the tire, didn't say that you would get — didn't you say to Mrs. Fred Johnson in words or substance that you would have your revenge for this deal? A No, I never did. * * * Q Now, didn't you make that statement that you would have your revenge for this matter in the presence of Fred Johnson too? A No sir."

In rebuttal, Mrs. Eva B. Johnson was asked: "Q Now, Mrs. Johnson, you heard his statement regarding the controversy about the automobile tire, did you not? A Yes sir. Q You heard his statement that he stated that he did not make the statement that he would have revenge on you and Fred Johnson; you heard that too? A Yes sir." She was then asked to "tell the jury what conversation you had with" the witness "during last fall regarding the automobile tire; what he said to you, and what you said to him." Objection sustained. She was then asked whether, when the witness made settlement with her for the tire, he had said that "he would have revenge for that?" Objection thereto was also sustained, whereupon plaintiff made no offer of proof.

It is generally the rule that: "Ordinarily in order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited." In re Estate of Woodward, 147 Neb. 270, 23 N. W. 2d 75. However, in In re Estate of Johnson, 100 Neb. 791, 161 N. W. 429, this court held: "When a question is asked that does not 'indicate to the trial court the relevancy of the testimony,' it is not error to exclude the testimony, unless the party pro-

pounding the question informs the trial court as to the relevancy of the testimony, and an offer of proof will enable the trial court to determine whether the evidence is competent. When the condition of the record and the form of the question itself show that it is relevant and competent, no offer of proof is necessary. The many decisions of this court in regard to requiring an offer of proof should be so understood." See, also, Gormley v. Peoples Cab, 142 Neb. 346, 6 N. W. 2d 78. The case at bar comes squarely within the latter rule.

Viewed in that light, we call attention to the rule that: "Cross-examination of a witness to show bias, hostility, or that he is actuated by a spirit of revenge, is entirely distinct from impeachment, which is governed by its own rules of evidence." Vassar v. Chicago, B. & Q. R. R. Co., 121 Neb. 140, 236 N. W. 189, 74 A. L. R. 1154.

In the latter opinion, it was said: "A very old New York case states: 'It is always competent to show that a witness is hostile to the party against whom he is called; that he has threatened revenge, or that a quarrel exists between them. A jury would scrutinize, more closely and doubtingly, the evidence of a hostile than that of an indifferent or friendly witness. Hence, it is always competent to show the relations which exist between the witness and the party against, as well as the one for, whom he was called.' Starks v. People, 5 Denio (N. Y.) 106.

" 'Hostility of a witness to the defendant may be proved by any competent evidence, either by the witness himself or by examination of other witnesses as to facts from which such hostility appears; it being unnecessary in such case to first examine the witness as to his hostility.' People v. Michalow (229 N. Y. 325) 128 N. E. 228.

" 'Generally, on cross-examination of a witness, any fact may be elicited which tends to show bias or partiality, and if the witness denies the fact showing the bias or interest, the cross-examining party may call other

witnesses to contradict the witness.' Cabel v. State, 18 Ala. App. 557. \* \* \*

"And it is further held that considerable latitude should be allowed in eliciting from a witness, or in attempting to elicit and to establish, bias, hostility, corruption, or interest of the witness bearing upon his credibility. Glass v. State, 147 Ala. 50." See, also, 70 C. J., Witnesses, § 921, p. 762; § 1143, p. 936; § 1144, p. 937.

For the reasons heretofore stated, the judgment should be and hereby is reversed, and the cause is remanded for new trial.

REVERSED AND REMANDED.