VIOLET KREPCIK, ADMINISTRATRIX OF THE ESTATE OF CALVIN L. KREPCIK, DECEASED, APPELLEE, v. INTERSTATE TRANSIT LINES, A CORPORATION, APPELLANT.

48 N. W. 2d 839

Filed July 16, 1951. No. 32974.

*C. B. Matthai, G. C. Holdrege, R. B. Hamer,* and *James G. McIntosh,* for appellant.

*Beatty, Clarke, Murphy & Morgan,* and *William S. Padley,* for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This action was before this court in Krepcik v. Interstate Transit Lines, 151 Neb. 663, 38 N. W. 2d 533; 152

Neb. 39, 40 N. W. 2d 252; and 153 Neb. 98, 43 N. W. 2d 609. As a result of the trial here involved plaintiff secured a favorable jury's verdict upon her first and second causes of action. Defendant filed a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. These motions were overruled and judgment was rendered on the verdict. Defendant appeals. We reverse the judgment of the trial court and remand the cause.

Defendant presents here errors in the giving and refusing to give instructions relating to its defense of contributory negligence, and assigns as error the refusal of the trial court to grant the alternative motion for a new trial.

The factual situation generally is set out in the opinion in 152 Neb. 39, 40 N. W. 2d 252, and will not be repeated here, although it will be necessary to refer to the evidence as to particular matters in order to dispose of the questions here presented. We will refer to the above case as our former opinion.

The defendant pleaded eight specifications of negligence of decedent. Seven of these are summarized in our former opinion.

In instruction No. 3 the court advised the jury as to the specifications of negligence which the plaintiff was required to prove, and stated that if the jurors were satisfied by a preponderance of the evidence that the propositions stated were true, they should find for the plaintiff, unless prevented by rules next following. They were also instructed as to the conditions under which they should find for the defendant on those propositions.

In instruction No. 4 the court advised the jury that if it found the defendant negligent in some manner proximately causing injury to the person and property of decedent, it should next consider the affirmative defense of contributory negligence, and that "The burden of proving contributory negligence is upon the defendant." The court then set out its construction of material

allegations of defendant as to contributory negligence and advised the jury that if it found by a preponderance of the evidence that the propositions were true, the jury would find that the decedent was guilty of contributory negligence: The jury also was instructed as to the conditions under which it would find against the defendant upon its affirmative defense.

In instruction No. 5 the court advised the jury that if it found that both decedent and defendant had been negligent in some manner proximately causing the injuries complained of, it should then compare the negligence and determine from the evidence the degree of negligence of each of the parties. The court instructed as to the rights of the parties.

The defendant assigns the giving of instruction No. 4 as error in several particulars. The first one is that the instruction did not advise the jury that the defendant was entitled to the benefit of evidence adduced for the plaintiff.

We have recently stated the applicable rule as follows: "If the defendant pleads that the plaintiff was guilty of contributory negligence the burden is upon him to prove that defense and this burden does not shift during the trial of the case. However, if the evidence adduced by the plaintiff tends to prove that issue the defendant is entitled to receive the benefit thereof and the court must instruct the jury to that effect." Mundy v. Davis, *ante* p. 423, 48 N. W. 2d 394.

The better practice, of course, is that the instruction to that effect be included in the instruction on contributory negligence. That it was not so included here is patent. We recognized, however, in the above decision that if other instructions could reasonably be construed to properly advise the jury in that regard, it would be sufficient.

We have referred to the language in instructions Nos. 3 and 4 as to "preponderance of the evidence." There was also in instruction No. 5 the statement that the

jury "will determine from the evidence." In the instruction with reference to the duty of the driver to obey stop signals there was a reference to considering "all of the evidence." There are other references to "the evidence" in the instructions.

Our attention is also called to the instruction on credibility of witnesses wherein the jury was told "It is your duty to carefully scrutinize and to dispassionately weigh the testimony of all the witnesses, giving to the several parts of the evidence such weight as in your judgment they should receive." In connection with this instruction our attention is called to City of Beatrice v. Forbes, 74 Neb. 125, 103 N. W. 1069, and to the statement therein that "It might perhaps have been better had the court said to the jury in plain terms that, in determining whether the plaintiff below was guilty of contributory negligence, they should take into consideration all the evidence before them upon that question, and that any evidence coming from the plaintiff or his witnesses in that respect should be considered together with that produced by the defendant. It can hardly be, however, that the jury were misled, as in its fourth instruction the court told them that, in determining the issues in the case, they should take into consideration the whole of the evidence and all the facts and circumstances proved on the trial, giving the several parts of the evidence such weight as they thought it entitled to."

The instruction above quoted relates to witnesses. The quoted language from the City of Beatrice case relates to issues in the case. The case is not controlling here.

We think it patent that if these instructions are to be construed as meeting the requirements of the rule stated in the Mundy case, then it would in effect nullify the rule. It necessarily follows that the instructions given do not comply with the requirement of the rule as stated in the Mundy case.

This requires a consideration of the evidence of plain-

tiff to determine whether or not it contains anything that tends to prove the issue of contributory negligence.

In the former opinion in this case we held that the evidence of the speed of decedent's truck was subject to a reasonable inference that speed contributed to the happening of the accident but pointed out that no witness testified as to speed at the point of the collision and that no witness for plaintiff testified as to the speed at which decedent was traveling. In the instant case plaintiff's witnesses testified to a speed of 30 to 35 miles an hour up to the time the collision happened. In addition to this there was plaintiff's evidence that the truck was loaded with cattle and over capacity, and under those circumstances a truck was more difficult to control and required a more moderate rate of speed than a truck loaded with dead weight that would not shift from side to side. To this is also to be added the evidence of skid marks.

Consistent with our former opinion and without going into the evidence as to other specifications of contributory negligence we hold that the plaintiff's evidence tended to prove the contributory negligence charge based on excessive speed. It follows that the failure of the trial court to properly instruct on that matter was prejudicial error.

Defendant pleaded negligence on the part of decedent in driving "at a rate of speed greatly in excess of a speed which was reasonable and prudent under the conditions then existing and at a rate of speed greatly in excess of 20 miles per hour while within said business district, to-wit, at a rate of speed of 40 miles per hour or more."

The trial court in instruction No. 4 submitted the issue as "In driving said truck at a rate of speed unreasonable under the circumstances then existing." Defendant contends that the trial court in so doing removed from the consideration of the jury the issue of

speed in excess of 20 miles an hour in a business district.

The rules are:

"It is the duty of the trial court, without request, to instruct the jury on each issue presented by the pleadings and supported by evidence.

"A litigant is entitled to have the jury instructed as to his theory of the case as shown by pleading and evidence, and a failure to do so is prejudicial error." McKain v. Platte Valley Public Power and Irrigation District, 151 Neb. 497, 37 N. W. 2d 923.

" 'It is the duty of the trial court, without request, to submit to and properly instruct the jury upon all the material issues presented by the pleadings and the evidence.' Dunlap v. Welch, 152 Neb. 459, 41 N. W. 2d 384. This rule applies to the affirmative defense of contributory negligence. Johnson v. Griepenstroh, 150 Neb. 126, 33 N. W. 2d 549.

"It is the uniform and proper practice in this state that where specific acts of negligence are charged and supported by the evidence, the trial court instructs as to the specific acts so alleged and supported. It necessarily follows that where specific charges of contributory negligence are pleaded and supported by proof the instructions should submit those specific charges to the jury for its determination. Reece v. Jefferson Transp. Co. (Mo. App.), 160 S. W. 2d 789. To fail to do so, whether or not requested to do so, is error." Krepcik v. Interstate Transit Lines, 153 Neb. 98, 43 N. W. 2d 609.

We have hereinbefore set out the evidence of plaintiff that decedent's truck was being operated at a speed of 30 to 35 miles an hour. Defendant offered a witness who fixed the speed of the truck at 40 to 45 miles an hour.

The evidence is that on the north side of the highway looking west from the intersection there is a bank building which runs west to an alley and houses a bank, a

liquor store, and a barber shop. Beyond that is a garage and other places of business, and then a residence with a lot of 25 or 30 feet fronting the highway, so that on the north side of the highway and in the block west of the intersection business places occupied 260 or 270 feet. On the south side of the highway and west of the intersection is a park. East of the intersection and on the north side of the highway there are business places for one and one-half blocks. On the south side and east of the intersection is a small business building at the corner, then vacant lots, and farther on an oil tank.

Section 39-741, R. S. 1943, is in part as follows: "(10) 'Business district' is the territory contiguous to a highway when fifty percent or more of the frontage thereon for a distance of three hundred feet or more is occupied by buildings and used for business. (11) 'Residence district' is the territory contiguous to a highway not comprising a business district when the frontage on such highway for a distance of three hundred feet or more is mainly occupied by dwellings and buildings in use for business."

Section 39-7,108, R. S. Supp., 1949, provides in part: "(1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. (2) No person shall drive a vehicle in any residence district within any city or village at a speed greater than twenty-five miles per hour unless, by the ordinance of such city or village, a greater rate of speed is specifically permitted. (3) The following speeds shall be prima facie lawful, but in any case when such speed would be unsafe, they shall not be lawful: (a) Twenty miles per hour in any business district; (b) twenty-five miles per hour in any residence district; * * *."

It is defendant's contention that this accident occurred in a business district as defined by the statute; that the speed of decedent's truck was in excess of the limits of the statute; and that the trial court erred to defendant's

prejudice in failing to submit that issue to the jury.

The provision in section 39-7,108, R. S. Supp., 1949, that "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing" is the basic speed rule. Other provisions following in the section are specific speed restrictions based on the existence of the fact situation or situations mentioned in the act. Folken v. Petersen, 140 Neb. 800, 1 N. W. 2d 916; Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499; Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178.

Section 39-741, R. S. 1943, begins: "The following words and phrases when used in sections 39-741 to 39-799 shall for the purpose of said sections have the meanings respectively ascribed to them in this section, except in those instances where the context clearly indicates a different meaning * * *." Plaintiff contends that the statutory definition of business district, therefore, does not apply to section 39-7,108, R. S. Supp., 1949.

Section 39-741, R. S. 1943, was originally section 1 of Chapter 110, Laws 1931, page 304. That act in section 4 (b) contained provisions for lawful speeds and became section 39-1135, C. S. Supp., 1933. This section was repealed. In 1935, section 4 as to lawful speeds was enacted in lieu of section 39-1135, C. S. Supp., 1933. Laws 1935, c. 134, § 4, p. 486, § 12, p. 490. This became section 39-11,101, C. S. Supp., 1937. This was amended in 1939. Laws 1939, c. 47, § 2, p. 209. It became section 39-11,101, C. S. Supp., 1941, and section 39-7,108, R. S. 1943. This in turn was amended in 1945. Laws 1945, c. 93, p. 315. It became section 39-7,108, R. S. Supp., 1949.

The provision in section 39-741, R. S. 1943, referring to sections 39-741 to 39-799 was put in the Revised Statutes of 1943 to identify the remaining sections of the original act of 1931 in lieu of the words "this act." This does not alter the fact that section 39-7,108, R. S.

Supp., 1949, is in effect an amendment of the 1931 act. Words defined in a prior statute will be understood in the same sense in subsequent statutes unless the contrary appears. Purtell v. Philadelphia and Reading Coal and Iron Co., 256 Ill. 110, 99 N. E. 899, Ann. Cas. 1913E 335. It necessarily follows that the definitions in the original act apply to the amendatory sections. There appears no legislative intent to the contrary. The definition, then, of "business district" in section 39-741, R. S. 1943, applies to the provisions of section 39-7,108, R. S. Supp., 1949.

This brings us down to this question. Was the deceased driving in a business district, as defined by the statute, when this accident occurred?

The definition in our statute is substantially that of the Uniform Code. 11 U. L. A., Motor Vehicle Acts, § 1, p. 10.

It does not appear that we have determined the requisite fact situation that makes the provision operative. Other courts have considered the matter. We are to so construe the act as to make uniform the law of those states which have enacted similar legislation. Bainter v. Appel, 124 Neb. 40, 245 N. W. 16; Behrens v. State, 140 Neb. 671, 1 N. W. 2d 289. From the decisions of other states we arrive at the applicable rule. In determining whether or not an accident happened within a business district as defined in section 39-741, R. S. 1943, and as used in section 39-7,108, R. S. Supp., 1949, the occupied frontage on both sides of the highway for three hundred feet or more traveled immediately before the accident by the vehicle involved is to be considered and land which is not occupied by buildings in use for business is not to be considered. McGill v. Baumgart, 233 Wis. 86, 288 N. W. 799; Mitchell v. Melts, 220 N. C. 793, 18 S. E. 2d 406; Utility Trailer Works v. Phillips, 249 Ala. 61, 29 So. 2d 289.

We do not determine the sufficiency of the evidence to show that the buildings were "in use for business,"

but rather determine that the frontage occupied is not shown to meet the requirements of the statute. The evidence here does not bring the place of the accident within a business district under the statute. The required density of buildings is not shown. It follows that the trial court did not err in refusing to submit the business district speed issue to the jury.

This holding disposes of other assignments of error based on the premise that the accident occurred while decedent was driving in a business district.

The defendant further pleaded negligence of the decedent in failing to keep a proper lookout for vehicles entering said intersection from the north, and for the purpose of keeping his truck confined to its proper lane of traffic; in failing to turn or direct his truck to the south when by so doing the collision could have been avoided; and in failing to stop the truck when by so doing the collision could have been avoided. In our former opinion we held that these charges presented questions for determination by a jury. It is not contended otherwise here. The question here presented is as to the adequacy of the instructions given in submitting those issues to the jury.

As to the defense of negligence, other than speed, above discussed, the court submitted the contentions of negligence as follows:

"(b) In driving said truck negligently upon the north half of said highway.

"(c) In driving said truck into the intersection without using due care to observe the approach of defendant's bus.

"(d) In failing to exercise reasonable control in the operation of said truck so as to avoid colliding with defendant's bus."

We have hereinbefore pointed out the rule that where specific charges of contributory negligence are pleaded and supported by proof, the instructions should sub-

mit those specific charges to the jury for its determination and that to fail to do so is error.

Here there were specific charges of negligence pleaded. Here the trial court did not directly or in effect submit the specific charges to the jury. The failure to do so was error.

The trial court in instruction No. 6 quoted the provisions of section 39-7,108, R. S. Supp., 1949, hereinbefore set out. Subsection (3) of this section sets out what shall be a "prima facie lawful" speed in a business district and a residence district as defined in the act. Subsection (4) of the section is: "The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, * * * or when special hazards exist with respect to pedestrians or other traffic * * * and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care * * *."

The defendant contends that the failure to submit these additional restrictions to the jury was prejudicial error. Defendant relies upon our holding in Hamblen v. Steckley, *supra*, that "An instruction reciting the provisions of statutes regulating and controlling the speed of motor vehicles should include therein all the material applicable statutory limitations and qualifications to enable the jury to observe and understand the duty of drivers at the time and place in question."

The plaintiff contends there is no evidence that decedent was going less than 20 miles an hour and hence the provision is not applicable. The restrictions set out in subsection (4) of section 39-7,108, R. S. Supp., 1949, are speed limitations upon the "prima facie lawful" speeds fixed for a "business district," a "residence district," and "any highway outside of a city or village."

They place a "duty to decrease speed" below those prima facie lawful speeds when the conditions described exist. They prescribe conditions under which the "prima facie lawful" speeds are "unsafe" and "shall not be lawful."

The facts here do not make operative the specific prima facie lawful speed provisions. The basic speed provision applies. The trial court was not required to instruct on the specific provisions here considered. The assigned error is not sustained.

Defendant pleaded negligence of the decedent in failing to confine the course of the truck to the south half of the traveled portion of the highway, in failing to yield the north half of the traveled portion of the highway to defendant's bus, and in failing to keep the truck on the south half of the traveled portion of the highway while proceeding into the intersection.

The statutes provide:

"Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway and shall drive a slow moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway and except when overtaking and passing another vehicle, subject to the limitations applicable in overtaking and passing set forth in section 39-748." § 39-746, R. S. 1943.

"In crossing an intersection of highways or the intersection of a highway by a railroad right-of-way, the driver of a vehicle shall at all times cause such vehicle to travel on the right half of the highway unless such right half is obstructed or impassable." § 39-747, R. S. 1943.

"Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one half of the main traveled portion of the roadway as nearly as possible." § 39-748, R. S. 1943.

In submitting the matter to the jury the trial court

copied into the instructions that part of section 39-746, R. S. 1943, omitting "subject to the limitations applicable in overtaking and passing set forth in section 39-748." No direct reference was made to sections 39-747 and 39-748, R. S. 1943. It is to be noted that sections 39-746 and 39-747, R. S. 1943, refer to "the right half of the highway" and section 39-748, R. S. 1943, refers to the "main traveled portion" of the highway.

The Supreme Court of Arizona in construing statutes comparable to sections 39-746 and 39-748, R. S. 1943, held that the sections should be construed together and that the "right half of the highway" means the right half of the main traveled portion of the highway as it exists at the time, i. e., the right half of that portion of the highway available for traffic, and that such constituted a simple, easily understandable, and at all times workable rule for motorists to follow. Dixon v. Alabam Freight Co., 57 Ariz. 173, 112 P. 2d 584, followed in Patton v. Kirkman, 109 Utah 487, 167 P. 2d 282. We adopt that construction as applicable to our statute.

Defendant's contention is that by quoting section 39-746, R. S. 1943, and not quoting section 39-748, R. S. 1943, the court put undue emphasis upon the "right half of the highway" provision and did not advise the jury of the statute requiring the yielding of one-half of the "main traveled portion." Strictly speaking section 39-748, R. S. 1943, does not apply to the fact situation here, for it relates to vehicles "proceeding in opposite directions." However, we do not rest the answer to this contention on that basis. Defendant contends that the trial court instructed that it was the duty of a driver to drive upon the right half of the highway and that this did not cover a duty to remain to the right of the center of the traveled portion of the highway. We see no merit to that contention.

The trial court in its instruction did not limit it to the use of the words "right half of the highway." The court further said: "Such half is determined after as-

certaining the total width of such highway which is then open and available for the use of vehicles and dividing such width by two." We think the instruction is in substantial accord with the two sections of the statute when construed together. The assignment is not sustained.

For the reasons given herein the judgment of the district court is reversed and the cause is remanded.

REVERSED AND REMANDED.

MESSMORE, J., participating on briefs.

CHAPPELL, J., dissents.